HOOPER vs. THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

RAILROAD COMPANY AS COMMON CARRIER: *Its liability for injuries to goods, while transferring them to the next carrier.* (1.) *Evidence of practice of shippers to give, and company to comply with, directions as to delivery of goods to next carrier.* (2.) *When it is presumed that company is to deliver to next carrier.* (3.) *Liability of the company during such transfer.* (4.) *Laws of Illinois limiting liability of railroad as common carrier of goods, held inapplicable.* (5.) *Cartman who made transfer, held an agent of the company.*
PARTY PLAINTIFF: (6-8.) *Shipper or consignee ?*

1. Where a bill of lading of goods destined for Boston, Mass., provided for their transportation from the point of shipment on defendant's road to its Chicago station, but stated nothing as to what was to be done with them there, the shipper (in an action for injuries done to them between said station and the depot of the next carrier) might show a practice of shippers to give, and of defendant to comply with, directions as to delivering goods to the next carrier; such evidence not tending to vary or contradict the bill of lading.
2. From the face of such a bill and the nature of the transaction it would be inferred that the defendant was to transfer the goods to the next carrier.
3. Where it is the general usage of a railroad company, in reference to goods carried by it to its terminus and marked for points beyond, to transfer them to the next carrier, and plaintiff contracted with reference to this usage, the company will be liable as *carrier* for injuries to the goods received before such transfer was completed.
4. The doctrine of the supreme court of Illinois, that when goods transported by railway have arrived at their destination and have been stored in a warehouse by the railway company, its liability as carrier is terminated, *held* not to apply to a case where the goods were consigned to a point *beyond* the company's route.
5. It was defendant's custom, as to goods carried by it to Chicago, destined for Boston, to deposit them in a certain part of its warehouse, to be taken thence by one H., a cartman, to the depot of a certain railroad running thence eastward. *Held,* upon the evidence in this case, that H. was merely defendant's agent for transferring the goods, and not an independent carrier, although he was in the habit of advancing defendant's charges, and collecting the amount thereof, with his own cartage, from the next company.
6. The *shipper* of goods, who has contracted for their safe conveyance, may sue for injuries thereto in transportation, although the title of the goods has vested in the consignee.
7. The bill of lading is not conclusive evidence of title in the consignee; but any presumption arising therefrom may be repelled by parol evidence.

8. Where flour was by the shipper sold "to arrive at Boston," the title remained in him until such arrival.

APPEAL from the Circuit Court for *Jefferson* County.

In September, 1868, plaintiff shipped certain flour by the defendant company's road, at a station in said county, and received a receipt or bill of lading therefor, in which the property was described as "100 barrels flour, marked to Harvey Scudder & Co., Boston, to be forwarded to Chicago station, upon the terms and conditions of the published tariff" of said company. The complaint avers that it was the uniform usage of the company in such cases, and especially its uniform and well established usage and mode of doing business with the plaintiff, upon the arrival of the goods at Chicago, to deliver them safely to a carrier by water from Chicago eastwardly on the route to Boston, and that the freight charges for the whole route should be paid at Boston, and that such was the understanding of the parties in this transaction; and that it became and was defendant's duty to safely carry the flour to Chicago and there deliver it to such a carrier by water; but that through its negligence the flour was not so delivered, but was wholly lost, to plaintiff's damage, etc. Judgment is demanded for the value of the flour at the place of shipment.

The answer was, in substance, that the flour was safely carried to defendant's station in Chicago, and placed in defendant's warehouse there, where it was consumed by fire without defendant's fault; and that by the law of the state of Illinois, the defendant's liability as a carrier ceased when the flour was deposited in the company's warehouse. The allegations of the complaint relative to the undertaking and duty of defendant to safely deliver to a carrier by water, are denied.

At the trial, after the bill of lading had been put

in evidence, the plaintiff testified that for over three years he had been in the habit of shipping flour from time to time by the defendant company's road, to Harvey Scudder & Co., of Boston, Mass. Against objection, he was then permitted to testify that the defendant company had always shipped the flour at Chicago on whatever route he had directed; that during the season of lake navigation, he always directed it to be shipped by lake, and insured, and in winter by rail; that the freight was invariably collected at the end of the route; that the custom was to give instructions as to re-shipment at Chicago to the local agent at the station where the flour was shipped on defendant's cars; that in this case he gave directions to ship by lake; and that the flour was sold to arrive in Boston. The local agent of the company testified in a similar manner, also against objection. The defendant read in evidence the decisions of the supreme court of Illinois in *Richards v. The Michigan Southern & N. I. R. R. Co.; Davis v. The Same Co.*; and *Porter v. Ch. & R. I. R. R. Co.*, 20 Ill. 404–412, showing that by the law of Illinois, a railroad company is not bound to give notice of the arrival of goods in order to terminate its liability as a common carrier, and that when goods have been carried to the end of the route, or their destination, and are placed by the company in its warehouse or depot, its liability as a common carrier ceases. Proof was then made, that the flour in question arrived safely and in due time at Chicago, probably during the night of Friday the 11th of September, and was stored in the defendant's warehouse on Saturday the 12th; and that on the following Sunday night, the warehouse, with all its contents, was destroyed by fire. One of defendant's witnesses was asked what was "defendant's custom in regard to freight arriving at Chicago over its lines, when consigned to parties beyond Chicago?" and he answered: "It was the custom, at that time, to unload property into the warehouse of the company

on its arrival, and then it was delivered to F. J. Huntoon, who was the owner and proprietor of teams and wagons, and engaged in the business of common carrier in the city of Chicago. Freight trains arrived ordinarily during the night, and were unloaded during the succeeding day. On being unloaded from the cars, property in transit would be placed in a portion of the warehouse designed for such particular property. Each morning said Huntoon was notified by the cashier of the company what freight had arrived, which he was to transfer, and charges on such freight would be collected from him. He then assumed the safe delivery of property at the place of re-shipment, whether it might be a propeller or a railroad. He collected from parties to whom he delivered, his own charges, as well as the charges paid to the company, and took receipts therefor. He was held by the company to a strict accountability for the safe delivery of property entrusted to his charge." He further testified that Huntoon had been thus engaged for several years before the receipt of the flour in question; that all freight received at defendant's depot at Chicago, consigned to places beyond, were delivered to him for carriage in the manner described; except when it was specially contracted to be delivered to connecting lines, *from defendant's cars;* and that no one was authorized to make such special contracts except defendant's general freight agent, and there was no such special contract in this case. The other evidence need not be stated.

The court instructed the jury, 1. That under the receipt read in evidence, defendant was liable only for loss occurring while the flour was in its possession as a common carrier; but that if, by custom and the course of dealing between the parties for several years, plaintiff had delivered his flour in this state, consigned and marked to consignees in Boston, taking a receipt like that read in evidence, and giving directions to the com-

pany's agent at the place of shipment to have the flour sent from Chicago by water during the season of navigation, the defendant selecting the carrier to receive the flour and forward it from Chicago, charges following the flour or collected from the party to whom defendant delivered them, then defendant's liability as a common carrier remained until it had notified Huntoon, or until it had selected and notified some other forwarder; and that such liability would include loss by fire occurring while the flour was in a building used by defendant for receiving and forwarding the flour. 2. That the defendant company, or its Wisconsin branch, being a corporation existing under the laws of this state, must be regarded, as to its transactions here, as a resident of this state, and this contract being made between residents of this state, and in part to be performed here, the rule established by the courts of Illinois would not apply. 3. " It can hardly be admitted that decisions of courts of a neighboring state, contrary to the decisions of our own courts, are binding upon the courts of this state, as between our citizens and a railroad company chartered under our own laws, upon a contract made and mostly executed here, even though such company may have a terminus in the border of a neighboring state." The court refused to instruct the jury, as defendant requested, that if Huntoon was a common carrier by wagon between defendant's warehouse in Chicago and other freight lines, and it was defendant's custom to deposit goods consigned to points beyond Chicago in a particular part of its warehouse, from which Huntoon uniformly received them, paying defendant's charges and delivering the goods to the next carrier, and if the flour in question was deposited in said warehouse in pursuance of said custom, then defendant's liability as carrier was at an end. A further instruction, to the effect that if the flour was " sold to arrive," plaintiff could not recover,

was refused; and also other instructions inconsistent with those given.

Verdict for plaintiff; new trial denied; and defendant appealed from a judgment on the verdict.

*Enos & Hall,* for appellant, argued that neither a parol agreement of the parties nor custom should have been received in evidence to vary the express stipulations of the bill of lading (*Schooner Reeside,* 2 Sum. 567; *Peet v. R. W. Co.,* 20 Wis. 594; 14 Wend. 26; *May v. Babcock,* 4 Ohio, 334; *Sayward v. Stephens,* 3 Gray, 97); that by the terms of the bill of lading defendant only agreed to carry the flour to its station in Chicago, and the fact that the consignees resided in Boston imposed no additional duty, but the contract was the same as though they did business at Chicago and the flour was consigned to them (*Garside v. Trent & Mersey Nav. Co.,* 4 Term, 583; dissenting opinion of DENIO, C. J., in *Ladue v. Griffith,* 25 N. Y. 369; *Meyer v. R. W. Co.,* 24 Wis. 566), and under these circumstances the law of Illinois put an end to the defendant's liability when the flour was placed in its warehouse (*Newman v. Kershaw,* 10 Wis. 333; *Smith v. Condry,* 1 How. (U. S.) 28; Story's Conflict of Laws, §§ 280–320); that if, however, defendant's liability as carrier were held to continue until the flour was delivered to the *next carrier* on the route to Boston, still there was evidence tending to show that this flour was delivered to Huntoon, a common carrier by wagon between defendant's depot and other freight lines, and that there was a perfect delivery in law to him, and it was error to refuse the instructions asked by defendant on that subject; that notice to Huntoon was not necessary, to discharge defendant from liability (Redfield on Carriers, 101; *Converse v. Transp. Co.,* 33 Conn. 166); and that defendant was only bound to deliver the flour according to the usage of its business, whether that usage was known to the shipper or not. *Van Santvoord v. St. John,* 6 Hill, 158; Redfield on Carriers, 147, and cases

there cited. They further contended that the unqualified consignment of the flour was presumptive evidence that the consignees were the owners, and delivery to the carrier was a delivery to them. Edwards on Bailment, 161; *Congar v. R. R. Co.*, 17 Wis. 486.

*Orton & Mulberger*, for respondent:

1. The receipt of the flour and its destruction while in the care of the company, make the latter liable without proof of any custom; but it was proper to show such custom, when it had been so uniform and established that the parties may be presumed to have contracted with reference to it. It then becomes a part of the contract, and may modify it. 2 Parsons on Con. 50, 53; *Anderson v. Pitcher*, 2 B. & P. 168; *Trueman v. Loder*, 11 A. & E. 589; *Hutton v. Warren*, 1 M. &. W. 466; *Loring v. Gurney*, 5 Pick. 15; *M. S. & N. I. R. R. Co. v. Day*, 20 Ill. 375; *Ill. Cent. R. R. Co. v. Johnson*, 34 id. 389. 2. The company is liable as carrier, having done nothing to relieve itself from responsibility as such. *Marshall v. Am. Exp. Co.*, 7 Wis. 1; *Wood v. Crocker*, 18 id. 345; *Hermann v. Goodrich*, 21 id. 536; *McLaren v. R. R. Co.*, 23 id. 138. 3. The decisions of the supreme court of Illinois cited by defendant's counsel have no bearing on a case like this. Where goods are to be carried to a point beyond the route of the first carrier, the doctrine of that court is like that of our own. *C. & R. I. R. R. Co. v. Warren*, 16 Ill. 502; *M. S. & N. I. R. R. Co. v. Day*, 20 id. 375; 34 id. 389. 4. "When goods are shipped and must pass through the hands of several intermediate carriers before arriving at the place of their destination, the duty of each intermediate carrier is to transport the goods safely to the end of his route, and deliver them to the next carrier on the route beyond." 34 N. Y. 497; *Angle & Co. v. R. R. Co.*, 9 Iowa, 487; 5 Pick. 15; *Eagle v. White*, 6 Whart. 505; *Parker v. Flagg*, 26 Me. 181; *Mich. Cent. R. R. Co. v. Ward*, 2 Mich. 538;

*Ostrander v. Brown*, 15 Johns. 39; *Gibson v. Culver*, 17 Wend. 305.

DIXON, C. J.   It was not error to receive evidence as to the practice of shippers in giving directions, and the usage of the company in complying with those directions, in forwarding goods consigned, as the goods in question were, from Chicago to their place of destination, by delivering them to the next carrier in the line of transportation directed.   The bill of lading was silent upon that subject, and it was not, therefore, testimony to vary or contradict it.   It was consistent with the bill of lading that such should have been the agreement or intention of the parties.   The bill contained nothing to the contrary—no express provision on the subject, and none from which any different agreement or intention was to be implied   It merely provided that the goods were to be forwarded from Johnson's Creek, the place of delivery to the company, to Chicago station, but what next was to be done with them it did not say.   It was fairly to be inferred from the face of the bill (it appearing thereon that the consignees resided in Boston and not at Chicago), as well as from the nature of the transaction, that the goods were to be transferred by the company or its agents, from Chicago station and delivered to some other connecting carrier, to be transported thence to Boston or over such carrier's route in that direction.   Such, we think, was the fair and reasonable inference from the bill of lading itself; but if not, then certainly it was not open to the opposite inference, that the parties agreed or intended that the goods were to be transported only to Chicago station, and there deposited until called for by the consignees or some agent of the consignees or shipper, and by him or them to be taken and again put in course of transit to their place of destination.   And the latter must have been the inference from the language of the bill, in order to

have excluded the testimony on the ground stated by counsel. The testimony was properly admitted.

And these considerations likewise disprove the second position taken by counsel for the company, which is, that the contract only required the company to transport the goods to Chicago and there deposit them in its warehouse, and that when it had done so, its duties as carrier ended, and it was thenceforth liable in the capacity of warehouse-keeper merely. In view of the evidence, which was properly received, as well as of the bill of lading, this construction seems quite inadmissible. And the testimony of the company's agents at Chicago, introduced by the company, also shows that such was not their understanding of the contract. They considered it their duty, or the duty of the company, to transfer and deliver goods thus consigned to the next carrier on the route beyond, and such was their constant practice. The general usage of the company in this respect, and with reference to which it was shown the plaintiff acted in the shipment of the goods, was likewise clearly established by the depositions of the same witnesses.

The next position assumed in defense is, that Huntoon was a common carrier of goods between the terminus of the company's road, its depot in Chicago, and the places where other lines of transportation commenced, and, in this case, the docks where the flour was to be delivered to the succeeding carrier by water; and that the depositing of the flour in that part of the company's warehouse where Huntoon was accustomed to receive and take all goods to be transferred by him, was a delivery to Huntoon as the next carrier in the course of transportation, and full performance of the contract on the part of the company. This, it is said, discharged the company from all further liability as carrier, and cast the burden of loss upon Huntoon as the next carrier in order, in whose custody the goods were at the time of their destruc-

tion by fire. If the evidence showed that Huntoon was a common carrier of goods in the way suggested, then it might become necessary to consider the effect of depositing the goods in the warehouse, as testified by the witnesses, or whether that was a delivery to him. But the evidence does not show that he was such carrier. On the contrary, the evidence shows that he was a mere transfer agent of the company, or carman employed by it to deliver the goods to the next carrier in the line of transportation designated. The depositions of the agents of the company at Chicago very clearly prove this, and there is no contradictory testimony. It is true that the mode of doing the business was, for Huntoon to advance the charges of the company and give receipts for the goods, and then to collect these charges, together with his own, from the next carrier. But this was for convenience merely, and did not change his character as agent. One of the witnesses for the company, at that time its local freight agent in Chicago, says: "Said Huntoon was held, by the company, to a strict accountability for the safe delivery of property entrusted to his charge." This, as well as the entire testimony of both the Chicago agents, very clearly shows the character of Huntoon's employment. He was a transfer agent of the company, and not a common carrier, as contended.

The fourth and last position taken is, that the plaintiff was not the owner of the flour at the time of the loss, and cannot sue, but that the title was in the consignees, who alone can maintain an action. In *Blanchard v. Page*, 8 Gray, 281, it was held, after a most elaborate examination, that the shipper named in a bill of lading may sue the carrier for an injury to the goods, although he has no property, general or special, therein. This it was held might be done by force of the original contract for safe carriage, made by the carrier with him. Such right of action upon the con-

tract is not affected by the provision of the Code which requires every action to be brought in the name of the real party in interest.] The shipper is a party in interest to the contract, and it does not lie with the carrier who made the contract with him, to say, upon a breach of it, that he is not entitled to recover the damages, unless it be shown that the consignee objects; for, without that, it will be presumed that the action was commenced and is prosecuted with the knowledge and consent of the consignee, and for his benefit.] The consignor or shipper is, by operation of the rule, regarded as a trustee of an express trust, like a factor or other mercantile agent who contracts in his own name on behalf of his principal. *Grinnell v. Schmidt*, 2 Sandf. S. C. 706; *Robbins v. Deverill*, 20 Wis. 148. Such is the true relation of the consignor; for by the bill of lading it appears that he made the contract in his own name for the benefit of his consignee.

But the bill of lading is not conclusive evidence as to the ownership of the goods. It may raise a presumption of title in the consignee, but such presumption is open to be explained or repelled by parol evidence to the contrary. It may be shown by such evidence that the consignor, and not the consignee, was the real owner. Edwards on Bailments, 562, and authorities cited; *Congar v. Railroad Co.*, 17 Wis. 486. In this case the proof was that the flour was "sold to arrive at Boston." By such contract there was no completed sale or title vested in the consignees until arrival at Boston. Benjamin on Sales, 432–436; Story on Sales, § 289. It was a sale upon that condition, and the property remained in the plaintiff, in whose name as owner the action was properly brought.

It follows from these views that the verdict and judgment in the court below were correct. The action was rightly brought, and upon the evidence, as to which there was no conflict, the goods were in the possession of the company as carrier, and not as bailee

for custody merely, at the time of their 'destruction. It follows also that the three several instructions asked by the company were properly refused. The first, assuming it to have been correct as a proposition of law, was inapplicable to the case. The goods were in transit at the time, and had not been carried to the end of the route or to their place of ·destination, and so the Illinois decisions had no influence. The second was improper, because there was no evidence to be submitted to the jury that Huntoon was a common carrier, by wagon, between the warehouse of the company in Chicago and other freight lines. The third requires no explanation beyond what has already been said.

The rule above held respecting the continuing liability of the company as carrier under the circumstances of this case, is directly sustained by the following authorities: *McDonald v. Western Railroad Corporation*, 34 N. Y. 497; *Goold v. Chapin*, 20 N. Y. 259; *Van Santvoord v. St. John*, 6 Hill, 167; 3 Kern. 569; 6 Seld. 431; 25 N. Y. 364. And the doctrine of the *lex loci* being out of the case, because the Illinois decisions apply only to goods which have reached the depot of final destination, the following cases also give much support to the rule: *The Morris & Essex Railroad Co. v. Ayers*, 29 N. J. Law R. (5 Dutch.) 393; *Blumenthall v. Brainard*, 28 Vt. 413; *Moses v. Boston & Me. R. R.*, 32 N. H. 523; *Wood v. Crocker*, 18 Wis. 345; *McMillan v. M. S. & N. J. R. R. Co.*, opinion of COOLEY and CHRISTIANCY, JJ., 16 Mich. 100–123; *Brintnall v. S. & W. R. R. Co.*, 32 Vt. 665; *Ouimit v. Henshaw*, 35 Vt. 604; *The F. & M. Bank v. The Champlain Transportation Co.*, 23 Vt. 211. The two last cases are valuable as showing the importance of the course of business or practice of the carrier in determining when the transit ends. And the case of *Converse v. N. & N. Y. Transportation Co.*, 33 Conn. 166, cited by counsel for the company, is not at all in conflict. The ·deci-

sion there was upon the ground that the property in question had been safely delivered to, and was in the actual custody and possession of, the next carrier. The case is clearly distinguishable.

*By the Court.*—Judgment affirmed.