## SOUTHERN EXPRESS CO. v. HEBER CRAFT.

1. COMMON CARRIERS—CONSIGNOR AND CONSIGNEE.—The S. E. Co., on the 22d December, 1861, undertook, at the request of C., to carry $100.00 from Holly Springs, Miss., to Bowling Green, Ky., and deliver to D., for which C. paid $1.50; and on the 4th of January, 1862, undertook in like manner to carry $65.00 as above stated, for which C. paid $1.50. The money was not delivered. C. afterwards paid D. the amount, and sued the S. E. Co. for the $165.00. *Held:* That C. was the proper party to recover the loss.

2. SAME—SAME.—The shipper is a party in interest to the contract, and it does not lie with the carrier who made the contract with him, to say, upon a breach of it, that he is not entitled to recover damages, unless it be shown that the consignee objects, for without that it will be presumed that the suit was commenced and so prosecuted with the knowledge and consent of the consignee, and for his benefit.

3. SAME—RECIPROCAL CONTRACT.—Where a bill of lading contains words importing a promise to convey and deliver, it is an acknowledgment of the receipt of the goods for the purpose of carriage, that they are received of A. B., the original shipper, or consignor, and that he is the owner, or has the power of an owner, and the right to contract for their safe carriage, and he has the right to sue on a breach of the contract, whether or not he has a general or special interest in them, the consignee not objecting. Upon such a contract the shipper, though without either a general or special interest in the property, agrees to pay the freight, if the consignee does not, and he is upon this undertaking responsible, and may be sued for the freights, and he can maintain an action in his own name for damages, and thus the contract is reciprocal.

Error to the circuit court of Marshall county.  Hon. O. DAVIS, Judge.

The facts in the case are sufficiently stated in the opinion of the court.

The following is the assignment of errors :

1. The court erred in overruling the motion of plaintiff in error for a new trial.

2. The action was improperly brought in the name of Craft, the consignor, and should have been brought in the name of Duncan, the consignee.

3. The court erred in giving charges numbered three and six, at the request of the plaintiff in the court below, now the defendant in error.

*Featherston, Harris and Watson*, for plaintiff in error:

We insist that the verdict of the jury in this case, was contrary to law and the evidence, and that the court below should have set it aside and granted the plaintiff in error a new trial.  The testimony shows that the money for which this suit was brought, was delivered to the Southern Express Company, at Holly Springs, Mississippi, on the 22d day of December, 1861, and on the 4th day of January, 1862, to be transmitted to J. D. Duncan, at Bowling Green, Kentucky. At that time Bowling Green was occupied by the Confederate army, under the command of Gen. Albert Sidney Johnson, and was confronted by the Federal army, under the command of Gen. Buell.  A battle between these forces was daily anticipated.  Would the Southern Express Company have been justifiable in sending forward these packages until it had learned that it would be safe to do so under the circumstances which surrounded the case? But if the packages had been sent forward immediately upon their delivery to the company, in Holly Springs, they were liable to great delay on the route, because Bowling Green was occupied by the Confederate forces, and all the lines of railroad converging at that point from the south, were under the control of the military

authorities. The Southern Express Company was, therefore, in that locality, controlled by the military authorities. It could only use the railroads running into Bowling Green from the south, in forwarding its packages, when it was permitted to do so by the military authorities. These authorities impressed into their service railroads and every other species of property which, in their judgment, their wants demanded. The ordinary rules of law, enforcing diligence on common carriers, would not apply to the Southern Express Company in this case. *Inter arma leges silent* is a maxim of law as familiar to the people of this country, since the late war, in practice, as it was, prior thereto in theory alone.

Again, there is no proof in this case showing that the lines were open between Holly Springs and Bowling Green after these packages were delivered to the company, so that they could have been forwarded and delivered. Mr. Craft swears that he passed over the line of road from Bowling Green to Holly Springs about the 12th of December, 1861, and the road was then in good running order. That was ten days before the first package was delivered to the company in Holly Springs. Mighty changes take place within ten days in time of war. The State of Kentucky might have been over-run and its government overthrown by the Federal forces within that time.

The witness, Ballard, swore that he believed that communication was open between Bowling Green and Holly Springs in December, 1861, and in January, 1862. But this was a mere impression of his, not based upon any knowledge or distinct recollection with reference to the subject. The evidence does not show, therefore, that these packages could have been forwarded before the fall of Bowling Green, which was on the 14th day of February, 1862. But the testimony of Ballard, the agent of the company, relieves the company from the charge of negligence, and shows that all was done by it which could have been done under the circumstances. Ballard swears that he has no recollection of

the time when these particular packages were forwarded, but he does recollect distinctly that in December, 1861, and in January and February, 1862, all packages delivered to the express office, in Holly Springs, were forwarded without delay, unless the points to which they were to be sent had fallen into the lines of the public enemy, or were endangered by their presence. Here is proof positive that these packages were forwarded if it was practicable to do so, and if they were not, the proof shows such a reason for not doing so as will relieve the company, in any court of justice, from all liability.

The proof shows, as we think, due diligence and proper discretion on the part of the company prior to the fall of Bowling Green, on the 14th of February, 1862. Our next inquiry is, what became of these packages of money? What was done with them by the company? The proof shows, that the Confederate army, when it fell back from Bowling Green, on the 14th of February, 1862, went directly to Nashville, Tennessee, and there halted, but evacuated Nashville on the 17th of February, 1862. These packages were handed to the cashier of the Southern Express Company, in Nashville, by the money clerk of the company, just before the fall of Nashville. Davis, the cashier, received them from the money clerk, and states, that they had probably been returned from Bowling Green to Nashville by the company. Reaching Bowling Green too late to be delivered by the company to J. D. Duncan, the consignee, they were sent to the Southern Express Company at Nashville, for safe keeping. In Nashville these packages were seized by the Federal authorites, after the place had been evacuated by the Confederate army and taken possession of by the Federal forces. The testimony of Davis, the cashier of the company at Nashvillle, shows clearly, that the Federal authorities in Nashville, seized the books, papers, money, packages, and every species of property belonging to the company in June, 1862, and with the balance, these identical packages, addressed to J. D. Duncan at Bowling Green. This the company could

not prevent, and is not responsible for the property thus taken. The plea of " *vis major* " is certainly a good one, and requires no reference to authorities in its support. If they were needed, however, the decision of this court, on that branch of this case, which went up from the chancery court, would be conclusive upon the point. Southern Express Company v. Heber Craft, 43 Miss., 508.

We think, therefore, that the court erred in refusing to set the verdict aside; because it was manifestly wrong, and without testimony to support it.

We will now notice the second error assigned, that the action was improperly brought in the name of Craft, and should have been brought in the name of Duncan, if brought at all.

A mere reference to the facts in proof, will settle this point. Craft swears, that he bought a horse from Duncan for $165.00, and was to send him the money in payment for the horse, by express. Craft lived at Holly Springs, Mississippi, and Duncan lived near Bowling Green, Kentucky, when this contract was made.

J. D. Duncan, the consignee, swears, that he sold Craft the horse near Bowling Green, Kentucky, for $165.00, and that Craft was to send him the money by express. Both of the parties to the contract, swear, that Craft was to send the money to Duncan by express. It was a stipulation in the contract, that Craft should send the money by express.

When Craft delivered the money to the express office in Holly Springs, in December, 1861, and January, 1862, and took its receipts for the same, he stood entirely discharged from all obligations to Duncan, arising under the contract. He had fully complied with the terms of the contract, and was released from all liability. He had no further interest in, or connection with the contract, or with Duncan; and if the money was lost by the company, Duncan alone could sue for the loss; Duncan alone could be injured by the misconduct of the company, after the delivery of the money to it by Craft. The payment of the money to Duncan by Craft in 1865, does not affect the legal question involved, in

the slightest degree. This payment, made by Craft in 1865, was made in his own wrong, and does not change the legal status of the parties, and give Craft a right of action against the Southern Express Company in 1866.

Upon well established principles of law, a party who has no interest in the subject matter of the suit, cannot bring the action for a redress of the wrong complained of.

With reference to a consignor and consignee, the general rule of law is, that an action brought against a common carrier for an injury done to their goods in transitu, must be brought in the name of the consignee, and not in that of the consignor. This is the rule when there is no distinct agreement between the parties, that the consignor shall be discharged from all liability upon his delivery of the goods to the common carrier.

In this case there was a stipulation in the contract, which in law, released Craft from all liability upon his delivery of the money to the express company. In support of the foregoing position, we cite the following authorities: 1 Chitty's Pleading, pp. 5 and 6; ib., 70; Grove v. Brien, 17 Curtis, 650, (8 'H., 439–440;) The Mary & Susan v. Wagenan, 3 Curtis, 452–458, ( 1 W., 25;) 2 Redfield on Railways, 171 and 172; 2 Kent, 3d ed., lec. 39, pp. 498, 499, 500; The Frances v. Claimant, 9 Cranch, 183; Bonner v. Marsh, 10 S. & M., 376; Shuts v. Wilgus, 56 Barb., (N. Y.) 662.

We come next to charges three and six, embraced in the third assignment of error. The third charge is in the following language: " The owner of articles lost or injured may maintain an action, notwithstanding they are consigned to a third person." It is hard to tell what was meant or intended by this charge. But, taken in connection with the others, and with the facts of the case, we suppose it was intended to lay down the principle that an action could and should be brought in the name of the consignor, and not of the consignee, for injuries done to articles in transitu by the common carrier. It must have been so understood by the court and jury when it was given. We submit that it

was clearly wrong, and states precisely what is not the law, but the reverse of it. The general rule is that, upon the delivery of goods to a common carrier, the title vests at once in the consignee, and an action for injuries done to them must. be brought in the name of the consignee, and not in that of the consignor. This rule prevails even where the goods are shipped at the risk of the consignor. We again refer to the authorities already cited on this point. The third charge is, therefore, manifestly wrong, was calculated to mislead the jury, and should have been refused.

The sixth charge refers a question of law to the jury for its decision. The question is referred to them for their decision, without instructions from the court as to what the law is. They are required by this charge to determine whether Craft was released from the liability to Duncan before Duncan received the packages of money. This was a question which the jury could not decide.

But it is liable to another objection, equally fatal. It asserts that if Craft was not released from liability to Duncan until Duncan received the packages of money, then Craft was the proper party to sue for the loss or non-delivery of the money. This was an erroneous principle. Upon the delivery of the packages to the company by Craft, the right of property, and the right to sue for its loss or injury, vested in Duncan, the consignee ; and this is true if the shipment was made at the risk of Craft, the consignor.

By this charge the jury were evidently misled. We think that the judgment of the court below ought to be reversed, and the cause dismissed; as it is clear that Craft cannot maintain the action in his name.

*Walter & Scruggs* for defendant in error :

In December, 1861, Craft delivered to the express company the moneys as expressed in the receipts, to be by said company conveyed to Bowling Green, Ky., to one Duncan, at that place. Duncan failed to receive the money, and in 1866 Craft brought this suit against the company. Judg-

ment by default was rendered at the return term of the process, and execution issued thereon. The appellant, after the rendition of the judgment, filed a bill in the chancery court, enjoining the collection of the judgment, alleging that the judgment was a nullity, the writ not being served upon any one authorized to represent the company. Injunction was obtained, and at the trial was dissolved by the chancery court, and the decree of the court below was reversed by this court, the judgment set aside, and a new trial at law awarded the company. The new trial was had, on the merits and judgment again for Craft, and the appellant brings the case, by appeal, to this court.

We submit that the verdict is in strict conformity with the law and testimony.

The money was delivered to appellant, a common carrier, to be transported from Holly Springs, Mississippi, to Bowling Green, Kentucky. Duncan, the consignee proves that, in December and January he called frequently at the office of the company for the package of money, but never received it, the company's agent informing him that no such package was received.

The burden of proof to exonerate the company from liability in failing to transport and deliver the money is upon the company.

"A common carrier is liable for all losses not occasioned by the act of God or the enemies of the country, and *the burden of proof is thrown upon him to show that the loss was occasioned* in a manner that will exempt him from liability." Turney v. Wilson, 7 Yerger, p. 340.

"Proof by a common carrier that the loss happened from some unknown cause is not sufficient to exempt him from liability." Turney v. Wilson, 7 Yerger, p. 340. This principle is well settled. See Johnson v. Friar, 4 Yerger, 48; Yerger v. Skipwith, Meigs, 502; E. T. & Ga. R. R. Co. v. Nelson, 1 Coldwell, 272; Womach v. Southern Express Co., 1 Heiskell, 256.

We submit, however, that the proof in this case shows

that there was an uninterrupted line of railway from Bowling Green to Holly Springs, and trains passing daily. The appellant offered no proof, and could get none, to show any excuse why the money was not safely transported.

Appellant insists that Craft, the consignor, could not bring this suit. We submit that the proof shows that he is the only proper one to sue. Craft was the owner of the money when delivered to appellant. Duncan, the consignee, had no interest in it. It was shipped to pay a debt to Duncan, the appellant having failed to carry out its contract and deliver this money, Craft paid his debt to Duncan and then instituted this suit.

" A consignor who owns the goods and sustains the injury from the damage or loss is the proper party to bring the action against the carrier. Redfield on Carriers, p. 233; Sanford v. Husatonic Railway, 11 Cushing, 155; Turney v. Wilson, 7 Yerger 341.

Craft was clearly the owner of the goods. Duncan had no interest; his debt had been paid; he had sustained no loss, and Craft was the only one who had sustained loss. The bill of lading is not conclusive evidence of the ownership of the goods; it may raise a presumption of title, but that presumption may be repelled or explained by testimony. Edwards on Bailments, 562; Conger v. Railroad Cos., 17 Wisconsin, 486; Hooper v. Chicago and Northern R. R. Co., 27 Wisconsin, p. 81.

Even, however, had the facts shown that Craft was not the owner of the goods at the time of the shipping, yet then he is the proper person to bring this suit.

In Blanchard v. Page, 8 Gray, p. 281, it was held, after most elaborate examination, that the shipper named in the bill of lading may sue the carrier for an injury to the goods, *although he has no interest, general or special,* therein. The same principle is held in Hooper v. The Chicago and Northwestern Railroad Company, 27 Wisconsin, p. 81 (also 9 Am. Rep., p. 439), by Chief Justice Dixon, in a very able and learned opinion; he holds that the shipper is a party in in-

terest to the contract, and it does not lie with the carrier who made the contract with him to say upon the breach of it, that he is not entitled to recover the damages, unless the consignee object.   The consignor or shipper is, by operation of the rule, regarded as a trustee of an express trust, like a factor or other mercantile agent who contracts in his own name on behalf of his principal.  See also Gennell v. Schmidt, 2 Sandf., S. C., 706 ; Robbins v. Derende, Wisconsin, 448.

The above principles sustain the charges given by the court below, and the judgment of the court below should, we respectfully submit, be confirmed

TARBELL, J., delivered the opinion of the court:

According to the declaration, the Southern Express Company, on the 22d day of December, 1861, undertook, at the request of Heber Craft, to carry $100.00 in money from Holly Springs, in this State, to Bowling Green, Kentucky, and there to deliver the same to J. D. Duncan, for the sum of $1.50, which was paid by Craft.   And, on the 4th day of January, 1862, undertook to crrry $65.00 to the same point, and to deliver to the same party, for the further consideration of $1.50, which was also paid by Craft.   At both the above dates the cars were running regularly between the two points named, and continued so to run until the 14th day of February thereafter, a period of about forty days. On the last day named, Bowling Green was evacuated by the Confederates, and was that night occupied by the Federals.   The money was never delivered to Duncan, who testified that he often called at the office of the company for the money, but that it was never received by him.   Several months thereafter, the money, while in the care of an agent of the company, in Nashville, was seized at that place, by the Federal authorities.

To the action the company pleaded the general issue, with notice that the money sued for was seized by the Federal troops during the late war without the fault of the company.

On the trial, it appeared that Craft, being in Kentucky,

bought a horse of Duncan for $165.00, and was to remit the money, by express, on his return to Holly Springs. There was no specific agreement that delivery to the company was to be considered payment or a discharge of Craft. Both Craft and Duncan testified, that Craft paid the money to Duncan after the war, and then brought this suit against the company. There was a verdict for plaintiff, and hence a writ of error. Two propositions were earnestly pressed by the company, in the court below, as they are here, viz: 1. That the company used due diligence, but was prevented from performance by the public enemy. 2. That the action should have been brought in the name of Duncan.

As to the question of diligence, there is no evidence showing an interruption of communication by railroad between Holly Springs and Bowling Green after January 4, until February 14, 1862. These packages were delivered December 22, 1861, $100.00, and January 4, 1862, $65.00. And there is nothing shown why they should not have been forwarded and delivered within one week after their receipt at Holly Springs. We are well aware of the uncertainties of military operations, and the dangers incident to communication at such times. If, however, the verdict of the jury was not right, we see nothing in the record to justify its disturbance.

With reference to the proper party plaintiff, whether consignor or consignee, a critical examination of the authorities shows, that the right of action changes from the one to the other upon that which might, perhaps, be considered very nice distinctions. Under circumstances, the consignor, though without either a general or special interest in the property, may sue for damages *in transitu*, if no objection be made by the real owner. Blanchard v. Page, 8 Gray, 281. To illustrate: If by the bill of lading, the contract to transport and deliver is with the shipper, then he may sue for damages to the goods, if not objected to by the real owners, though he be a mere agent, and without interest general or special. (Ib.) If, however, the bill of lading states the contract to be with the consignee, then he should sue. (Ib.)

In the authority referred to (8 Gray) the subject is very fully discussed, as it is also in Hooper v. C. and N. R. R. Co., 27 Wis., 81. In the latter case, it is said, the shipper of goods, who has contracted for their safe conveyance, may sue for injuries thereto in transportation, although the title of the goods has vested in the consignee. The court, in the course of a very able opinion, say : " The fourth and last position taken is, that the plaintiff was not the owner of the flour at the. time of the loss, but that the title was in the consignees, who alone can maintain an action. In Blanchard v. Page, 8 Gray, 281, it was held, after a most elaborate examination, that the shipper named in a bill of lading may sue the carrier for an injury to the goods, although he has no property, general or special therein. This, it was held, might be done by force of the original contract for safe carriage, made by the carrier with him. Such right of action upon the contract is not affected by the provision of the Code, which requires every action to be brought in the name of the real party in interest. *The shipper is a party in interest to the contract, and it does not lie with the carrier, who made the contract with him, to say, upon a breach of it, that he is not entitled to recover the damages unless it be shown that the consignee objects, for, without that, it will be presumed that the action was commenced and is prosecuted with the knowledge and consent of the consignee, and for his benefit.* The consignor or shipper is, by operation of the rule, regarded as a trustee of an express trust, like a factor, or other mercantile agent, who contracts, in his own name, on behalf of his principal. Grinnell v. Schmidt, 2 Sandf. S. C., 706 ; Robbins v. Deverill, 20 Wis., 148. Such is the true relation of the consignor; for, by the bill of lading, it appears that he made the contract in his own name, for the benefit of his consignee."

Joseph v. Knox, 3 Camp., 320, was an action by a shipper against a ship-owner, on a bill of lading, in which it was contended that the action would not lie, because the plaintiff did not appear to be the owner of the goods. Lord Ellen-

borough held, "that the action will lay on the privity of contract established between the parties, by means of the bill of lading. The plaintiff was the party from whom the consideration moved, and to whom the promise was made. After such a bill of lading, the ship-owner cannot say to the shippers they have no interest in the goods, and are not damnified by the breach of contract."

The Lord Chancellor of England, in a recent case in the House of Lords, after reviewing the authorities, announced the following as the doctrine agreed by the Lords to be declared in that case: "These authorities establish the proposition that, although, generally speaking, where there is a delivery to a carrier, to deliver to a consignee, he is the proper person to bring the action; yet if the consignor made a special contract with the carrier, the special contract supersedes the necessity of showing the ownership in the goods, and the consignor, the person making the contract with the carrier, may maintain the action, though the goods may be the goods of the consignee." Dureloss v. Lambert, 6 Cl. and Fin., 600.

The opinion in Blanchard v. Page, *supra*, was by Chief Justice Shaw, who, at great length, analyses the language, terms, conditions and purposes of a bill of lading, and reviews all the authorities in England and the United States. As in the case at bar, that was an action upon the contract to transport and deliver certain goods contained in the bill of lading. The contract was with the shipper, and the action was in his name, though he had neither a general or special property in the goods. The facts in that case were these: The goods were purchased in Boston, by Sutton, Griffiths & Co., of Fort Smith, Arkansas; the plaintiffs in the action were authorized and requested by Sutton, Griffiths & Co., to cause the goods to be shipped on board of a vessel for New Orleans, to a forwarding house there, named by them, A. Q. Gaines & Co., to be forwarded by them to the owners, at Fort Smith; and in the language of the court, "the evi-

dence shows conclusively that all the goods were the property of Sutton, Griffiths & Co., at the time of the shipment and of the alleged loss." The court then say: " We therefore assume, for the purpose of discussing this question intelligently, that they were the sole owners of the goods during their transit; that neither Blanchard, Converse & Co., the shippers, and present plaintiffs, had any interest in the goods, or in their safe carriage and delivery, except what arises from the bill of lading itself; nor had Gaines & Co., the consignees, at New Orleans, any interest in the goods, but only an authority from Sutton, Griffiths & Co., to receive the goods as their agents at New Orleans, and forward the same to them at Fort Smith, a distant point in the interior, to pay the freight, and take suitable measures for so forwarding the goods."

Of the bill of lading, besides an analysis of its language and terms, the court observe: " The bill of lading does not contain express words importing promise, contract, or stipulation; but it contains words equivalent. It is an acknowledgment of the receipt of the goods, for the purpose of carriage, that they are received of A B, the shipper, and in the absence of any such words as, 'for account and risk of C D,' or ' by order or for account of E F,' the consignee, and in the absence of any terms describing the shipper as agent, or stating the property to be in another person, no presumption can arise in favor of any other party. It is an admission on the part of the ship-owner, that he has received the goods from the shipper, and that the possession came to him from the shipper; that he is the owner, or has the power of an owner, and has a right to direct the destination of the goods, and has good right to contract with the ship-owner for their safe carriage."

In that case, the contract of shipment was made by the plaintiffs, as the agents of Griffiths & Co., whose names were not mentioned, whereupon the court remark: "The question is not whether Griffiths & Co., as principals, might not maintain an action on a contract made for their account, by

their agent; but whether the plaintiffs, as the party actually making the contract, in the absence of any action brought by the principal, may not maintain the action."

The conclusion in the case quoted from is this: "It does not appear in the present case, that the owners of the goods have ever made any objection to the maintenance of this action by the plaintiffs. On the contrary, we understand that it was commenced and is prosecuted with their knowledge and consent, and for their benefit. And the court are of opinion that this action can be maintained by the plaintiffs, being the original shippers and consignors in the bill of lading, by force of the original contract for safe carriage, made by the defendants with them; and it is not for the defendants to say that, upon a breach of that contract, the plaintiffs, with whom it was made, are not entitled to recover the damages, which are the direct and natural consequence of such breach of contract."

By such a contract, the shipper, though without either a general or special interest in the property, agrees to pay the freight if the consignee does not, and he is upon this undertaking, responsible to, and may be sued, by the shipowners, for the freight. And, as shown, the shipper may have an action in his own name, for damages to the goods. In other words, the contract is reciprocal.

The counsel in the very interesting case of Blanchard v. Page, insisted, as do counsel in the case at bar, that delivery, to a carrier, whether evidenced by a bill of lading or not, vests the property in the consignee, who ought, therefore, except in the few special cases mentioned by him, to sue for any injury to the goods; that the bill of lading is first to be looked to as the medium of the intent of the parties; that in the ordinary form of the bill of lading, as in that case, (and in the case at bar,) the property *prima facie* vests in the consignee, and he alone is entitled to sue. The counsel conceded, however, that if it appears by the bill of lading, or by extrinsic evidence, that the property described therein is shipped on account of the consignor, or at his risk, *or if he*

*pays the freight thereon,* (as in the case at bar,) or makes a special contract for carriage, (as here,) then there is established a priority of contract between him and the carrier, and the contract of carriage is presumed to be with him and he may sue. And he cited: 1 Atk., 248; 1 Ld. Raym., 271; 8 T. R., 330; 3 Bos. v. Pul., 582; 2 Campb., 36; 4 B. & C., 219; 1 Johns., 215; 8 How., 439; 17 ib., 100; 6 East., 21; 5 Met., 306; Morton on Vendors, 416; 1 Walford on Parties, 31 et seq. It was further insisted, by the counsel, that the only excepted cases are these: (1.) *When the shipper or consignor pays the freight, or makes a special contract.* 5 Burr, 2680; 1 T. R., 659; 3 Cowp., 320; 6 Cl. & Fin., 600. (2.) When the consignor or shipper retains the property in the goods. 3 B. & Ald., 277; 5 ib., 350; 1 M. & Rob., 233. (3.) When the consignor and consignee are both interested in the goods, as in the case of bailor and bailee. 1 Nev. & Man., 420.

In what respect the conclusions of the court differed from the views and concessions of learned counsel in that case, may be noted by a comparison of the quotations given above.

The result of the cases as stated in Abbott on Shipping, 337, is this: " In the case of an express contract, evidenced by a bill of lading, the action may be brought by the shipper with whom the master contracted, or by the owner of the goods, whose agent the shipper was."

Mr. Justice Bailey, in Sargent v. Morris, 3 B. & Ald., 277, says: " Now I take the rule to be this—if an agent acts for me and in my behalf, but in his own name, then, inasmuch, as he is the person with whom the contract is made, it is no answer to an action in his name to say that he is merely an agent; unless you can also show that he is prohibited from carrying on that action by the person on whose behalf the contract was made. In such cases, however, you may bring your action, either in the name of the party by whom the contract was made, or of the party for whom the contract was made."

Abbott, Ch. J., drew the distinction between that case, which was for breach of the undertaking of the shipowner to

carry safely, and a case where the goods have vested in the consignee, on which an action in another form might be brought; and he remarks: "A transfer of the property is however, very different from a trasfer of the contract."

It is stated in 2 Red. Law of Railw., p. 171, § 175, (8,) that, " actions against carriers may be brought in the name of bailees or agents, who have the rightful custody of the goods, *and who make the bailment,* or in the name of the owner."

In support of the point made in behalf of the plaintiffs in error, that upon the delivery of the packages to the express company at Holly Springs, the title to the money vested in Duncan, and, therefore, that this suit should have been brought in his name. Reference is made to 1 Ch. Pl., 5, 6, 70 ; The Frances, 9 Cranch, 183 ; The Mary & Susan, 1 Wheat., 25 ; Grove v. Brien, 8 How., 429 ; 2 Kent., 499 ; Bonner v. Marsh. 10 S. & M., 376 ; and Shuts v. Wilgus, 56 Barb., 662.

As understood, these authorties show: (1.) When the right of action vests in the consignor. (2.) When in the consignee. (3.) When in other parties. (4.) When title to the goods is involved and determines the right of action ; and, (5.) The facts which transfer the right of action from one to the other, or rather, which vests the right in the one or the other of several parties. The present action is believed to be in accordance with the views of Chitty, Kent, and Redfield. 1 Ch. Pl., 6, 7 ; 2 Kent, 11th ed., (1867,) Lecture 39, p. 499, 500 ; 2 Red. L. of R., 170–172, and Shuts v. Wilgus, 56 Barb., 662,

The Frances, 9 Cranch, 183, was a petition for the restitution of goods captured during the war of 1812. The question was, whether the title to the goods was in the English or American merchant, upon which depended the right to restitution.

The Mary and Susan, 1 Wheat, 25, was precisely like the case of The Frances.

Grove v. Brien, 8 How., 429 was a contest between a creditor of the consignor and the consignee. The title was

held to have vested in the consignee before the creditor interposed his claim.

Bonner v. Marsh, 10 S. & M., 376, like that of Grove v. Brien, was a contest between an attaching general creditor of a consignee of cotton, attached in transit, and the consignee also a creditor of the consignor. The court say of the case, that: " The true and only question is the question of title. Was it the property of McRae when the attachment was levied, or of Bonner, etc.? In other words, had there been a sale and delivery?" *Held:* There had not been a sale and delivery, and the attachment was sustained. Beyond this brief abstract, these cases need not be developed, as their bearing upon the question under discussion is too remote to influence the result.

Referring to the later and more direct authorities heretofore cited, it will be seen that this case is solved by its simple facts, and upon familiar principles. To explain and enforce this remark is the object of what follows, although to some extent, at the expense of a repetition of preceding portions of this opinion.

At the request of Craft, the express company contracted to transport and deliver the packages to Duncan, at Bowling Green, the freight being paid in advance by Craft. Duncan does not object to the suit in Craft's name, for the best of reasons, to-wit: that he has been paid by Craft, and therefore has no claim on the company. The testimony of Duncan was taken in this cause, and he not only does not object to the action, but testifies that Craft has paid him. A judgment in this case is, therefore, doubly a bar to a suit by Duncan; not alone because, knowing of this action, he did not object to it, but because of his full indemnification by payment from Craft. The action in the name of Craft, and the result in the court below, are clearly in accordance with the highest authorities. But, even in the absence of the payment of Duncan by Craft, the former not objecting, this action would be sustained upon its intrinsic merits, without

the support of the recent and enlighted precedents referred to, as the result merits the justice of the case.

It is true the payment of Duncan by Craft is a gratifying and contributory fact, but has no material influence in the determination of the cause. It serves this purpose, however, that it precludes all possibility of controversy between Craft and Duncan over the avails of the judgment, and renders more certain to the company that the judgment is a bar to further prosecution.

The action is brought upon the contract of the company with Craft, and is sustained expressly upon that basis. Hence, the question whether the money, when deposited with the company, became the property of Duncan, is not involved. If Craft had not already paid Duncan, the former would be presumed to be the agent or trustee of the latter and suing for his benefit, within the authorities cited.

Referring to other points made by counsel, it may be remarked that it is not deemed necessary to determine under what circumstances the action might or ought to have been brought in the name of Duncan, nor, generally, when the consignee instead of the consignor is the rightful party in actions against carriers for injuries to goods; nor yet, when such actions must be brought by the legal owner, beyond the instances furnished by the authorities.

The single proposition intended to be asserted by this adjudication is so happily stated by one of the earliest cases of this character on record, it will be here quoted for that purpose. Reference is made to Davis v. Jones, 5 Beon., 2680, which was an action against a common carrier by land, and was decided on the footing of an original contract. The case was before Lord Mansfield, who held that the defendants were liable for the consequences to the original consignors, whether the property was in them or not, because the carrier agreed with them to carry the goods safely, and the action was for the breach of that agreement. The doctrine announced in that case by Lord Mansfield is adopted and declared as the true rule in the case under consideration.

In contrast with Davis v. Jones, is Dawes v. Peck., 8 T. R., 330, one of a class of cases where no bill of lading is usually given, and where the party in whom the legal interest is vested is the rightful party to an action against a carrier. Lord Kenyon stated that the owner of the goods is the proper party to an action against a carrier, because " he is the person who has sustained the loss by the negligence of the carrier, and whoever has sustained the loss is the proper party to call for compensation from the person by whom he has been injured." This case has served to mislead the profession in some instances, but it was a case of carriage by stage, where it is usual to pay the price of carriage on booking the goods, at the wagon office, without taking a bill of lading. Dawes v. Peck, was decided only a few years later than Davis v. Jones, and as the one served to express the rule in the case at bar, the other is given as a most apt illustration of a case where the right of action against a carrier for injuries to goods devolves on the person having the legal interest therein.

The questions herein discussed being of first impression in this State, and of growing practical interest, it is believed the attention bestowed upon them will not prove without value. In addition to the authorities heretofore cited, the following have been consulted, and are appended for the convenience of future investigations: Green v. Clark, 13 Barb., 57 ; Sandford v. H. Railway, 11 Cush., 155 ; Arbuckle v. Thompson, 37 Penn. St., 170 ; Elkins v. B. and M. Railway, 19 N. A., 337 ; White v. Bascom, 28 Vt., 268 ; Wing v. N. Y. and E. Railway, 1 Hill., 235 ; Ill. Cent. Railway v. Cowles, 32 Ill., 110 ; Creery v. Holly, 14 Wend., 26 ; Covill v. Hill, 4 Denio, 330 ; Merian v. Funck, ib., 110 ; Wolfe v. Myers, 3 Sandf., 7 ; Greenl. Ev., § 305 ; 3 B. and Ad., 523 ; 9 Yerg., 446 ; 1 Ld. Ram., 271 ; Alfridson v. Ladd., 12 Mass., 173 ; Stackpole v. Arnold, 11 ib., 29 ; Buffum v. Chadwick, 8 ib., 103 ; VanStaphorst v. Pearce, 4 ib., 263 ; Savage v. Rix, 9 N. H., 269 ; Story on Agency, §§ 155, 160, 396 ; Doe v. Thompson, 2 Forter, 217 ; 1 Am. Ld. Cas. (1st ed.), 460 ;

Clap v. Day, 2 Greenl., 307 ; Com. Bank v. French, 21 Pick., 486; 1 H. Bl., 81; Paley on Agency, c. 5; Addison on Cont., 782; Angell on Carriers, § 397 ; 10 Watts, 384; Abbott on Shipping, (7th ed.), 319 ; 3 Mod., 321 ; 8 T. R., 531 ; 11 Mass., 72 ; 1 B. and Ald., 575 ; 7 Cow., 670 ; 1 H. Bl., 359; Davis v. Jones, 5 Bur., 2680 ; 8 T. R., 330 ; 13 East., 399 ; 1 T. R., 659 ; 4 Ad. and El. N. R., 260 ; 1 Camp., 369 ; Thompson v. Dominy, 14 M. and W., 403 ; 17 Johns., 23 ; 6 Ald. and El., 486 ; 5 B. and Ad., 393 ; 12 Barb., 310, etc.

Judgment affirmed.