WATERMAN vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

*November 6 — November 25, 1884.*

*Carriers: Overcharge: Party plaintiff: "Trustee of an express trust."*

> One with whom a contract for the carriage of goods is made, and who is described therein as the consignor, consignee, and sole owner, may maintain an action to recover an overcharge exacted by the carrier as a condition of the delivery of the goods, although he was not in fact the owner and did not personally furnish and pay the overcharge.    The plaintiff in such case is "a trustee of an express trust" within the meaning of sec. 2607, R. S.

APPEAL from the Circuit Court for *Walworth* County.
The case is thus stated by Mr. Justice CASSODAY:
"On or about February 2, 1880, in consideration of $90 then paid, the defendant, at Darien, Wisconsin, agreed with the plaintiff in writing to transport one car-load of goods, consisting of household goods, farming implements, one pair

Waterman vs. The Chicago, Milwaukee & St. Paul R'y Co.

of horses, and some lumber, described therein as the property of the plaintiff, from said Darien to Plum Creek, in the state of Nebraska. The writing recited that the property was received of the plaintiff at the former place and consigned to him at the latter place. As a part of the contract the plaintiff therein released the defendant from certain liabilities, and was to and did accompany the property; and for that purpose was to and did receive a free pass from the defendant. When the car reached Plum Creek, the railroad company having the same in charge refused to deliver the property to the plaintiff unless he would pay an extra charge of $32.28 over and above that already paid, as expressed in the contract, as freight, and in compliance with that exaction the same was then and there paid, and the property delivered to the plaintiff. This action is to recover back the amount of such excessive charge so exacted and paid.

"It appears as a matter of fact that the property belonged to Charles Nowlan; that the negotiations for the carriage were conducted by his brother, O. F. Nowlan; that the agreed freight ($90) was paid by Cheesbro, the father-in-law of Charles Nowlan; that at the time of the loading of the car Cheesbro started to sign the contract in behalf of Charles Nowlan, when the defendant stopped him, and insisted that as the plaintiff was to accompany the goods and receive them at Plum Creek, he should execute the contract, which he accordingly did, and that recited that the $90 was received of Cheesbro for the plaintiff. It further appears that the amount of the extra charge exacted at Plum Creek was, in fact, furnished and paid by Charles Nowlan in the presence and with the consent of the plaintiff.

"The answer consists of a general denial merely. Upon the trial the jury found for the plaintiff, and assessed his damages at the amount of such excessive charges and interest, and from the judgment entered thereon the defendant appealed."

For the appellant there was a brief by *Fuller & Fuller*, and oral argument by *Burton Hanson*.

*A. S. Spooner*, of counsel, for the respondent.

CASSODAY, J. Notwithstanding the plaintiff is described in the contract of carriage as consignor, consignee, and sole owner, yet the defendant seeks to escape liability for the repayment of the excessive exaction on the sole ground that the plaintiff was not the owner of the property, and did not personally furnish and pay the overcharge. Is such a defense available?

The question has elicited much discussion, and the adjudicated cases upon it present a considerable disagreement. We make no attempt to reconcile an irreconcilable conflict. It is enough to know that our conviction as to the law applicable has the sanction of respectable authority, and especially under our statute as it has been construed by this court. The question is not whether the owner could have maintained the action, for he did not bring the action. There seems to be no dispute that, where there is nothing appearing to the contrary, the consignee is presumed to be the owner of the property, and as such may maintain an action for its loss or depreciation in value by reason of the negligence of the carrier. Undoubtedly this presumption may be overcome by evidence. A consignor may have a right of action against the carrier by reason of ownership. So he may have such right of action on privity of contract. The contract seems to be controlling, at least to a certain extent, in all cases. *Evans v. Marlett*, 1 Ld. Raym. 271; *Davis v. James*, 5 Burr. 2680; *Mason v. Lickbarrow*, 1 H. Bl. 357; *Moore v. Wilson*, 1 Term, 659; *Joseph v. Knox*, 3 Camp. 320; *Dunlop v. Lambert*, 6 Clark & F. 600; *Freeman v. Birch*, 3 Q. B. 492; *Blanchard v. Page*, 8 Gray, 281; *Finn v. Western R. R. Corp.* 112 Mass. 524; *Carter v. Graves*, 9 Yerg. 446; *Northern Line Packet Co. v. Shearer*,

61 Ill. 263; *Southern Exp. Co. v. Craft*, 49 Miss. 480. A careful analysis of these cases will be found in a well-written article by Judge PIERCE, of Tennessee, in 7 South. Law Rev. (N. S.), 255–283.

It appears that much depends upon the nature of the act complained of and the character of the action. Thus, in *Carter v. Graves, supra*, it was said "that, in all actions on the case against a carrier for a loss or injury done to property, the wrong is the gist of the action, and the contract to deliver collateral to it. In all actions of *assumpsit* for not delivering according to contract, the contract to deliver is the gist of the action, and the loss or injury sustained is collateral thereto." In several of the cases above cited, an action for the breach of the contract was maintained by a party to the contract having no ownership or interest in the property carried. Thus, in *Joseph v. Knox, supra*, the plaintiffs had no ownership nor interest in the goods, but, as shippers, were parties to the contract, and it was held that they might maintain the action upon the bill of lading for the failure to carry and deliver. Lord Chief Justice ELLEN-BOROUGH observed that "there is a privity of contract established between these parties by means of the bill of lading. That states that the goods were shipped by the plaintiffs, and that the freight for them was paid by the plaintiffs in London. To the plaintiffs, therefore, from whom the consideration moves, and to whom the promise is made, the defendant is liable for the non-delivery of the goods. After such a bill of lading has been signed by his [the carrier's] agent, he cannot say to the shippers they have no interest in the goods, and are not damnified by his breach of contract. I think the plaintiffs are entitled to recover the value of the goods, and they will hold the sum recovered as trustees for the real owner."

So in *Hooper v. C. & N. W. R'y Co.* 27 Wis. 91, it was said that "the shipper is a party in interest to the contract, and it

does not lie with the carrier who made the contract with him to say, upon a breach of it, that he is not entitled to recover the damages, unless it be shown that the consignee objects; for without that it will be presumed that the action was commenced and is prosecuted with the knowledge and consent of the consignee, and for his benefit. The consignor or shipper is, by operation of the rule, regarded as a trustee of an express trust, like a factor or other mercantile agent who contracts in his own name on behalf of his principal."

Here the defendant contracted solely with the plaintiff. In the contract the defendant, with full knowledge of the facts, recognized the plaintiff as sole owner of the property. The freight had been fully paid in behalf of the plaintiff. To him the defendant, in consideration of such payment, expressly agreed to deliver the property at the place of consignment. This express agreement was broken by the refusal to so deliver except upon condition of a further payment of an unauthorized exaction. This unauthorized exaction was complied with when the delivery was made. Having broken the contract, and received the overcharge in consequence of the breach, the defendant seeks to escape liability for the breach on the ground that the only party with whom it contracted was not in fact the owner of the property, and did not personally furnish and pay the overcharge exacted as a condition of the delivery. To hold such a defense available would, in effect, abrogate an express written contract. One exception to the statutory rule that "every action must be prosecuted in the name of the real party in interest" (sec. 2605, R. S.), is that "a trustee of an express trust . . . may sue without joining with him the person for whose benefit the action is prosecuted." Sec. 2607. "A trustee of an express trust, within the meaning of this section," must "be construed to include a person with whom, or in whose name, a contract is made for the benefit of another." *Ibid.* By amendment these

provisions have been made applicable to actions brought in justice's court, as this was. Subd. 27, sec. 2, ch. 194, Laws of 1879. If the consignor or shipper could properly be "regarded as a trustee of an express trust," under this statute, as held in *Hooper v. C. & N. W. R'y Co. supra*, then certainly the person described in the contract as consignor, consignee, and sole owner, and for whom the freight has been paid, must also be regarded as a trustee of an express trust under the statute. *Allen v. Kennedy*, 49 Wis. 549.

*By the Court.*— The judgment of the circuit court is affirmed.