JUNE TERM, 1863.       477

Congar vs. The Chicago & Galena Union R. R. Co.

## CONGAR VS. THE GALENA & CHICAGO UNION RAILROAD COMPANY.

An application by the defendant for a continuance of the cause upon the ground that it was taken by surprise by finding certain depositions on file therein, was properly denied after the plaintiff had withdrawn such depositions.

Where the defendant knew or had reason to believe long before the trial that certain persons possessed information which might be useful to it at the trial, and neglected to procure their testimony, it was not error for the court to refuse a continuance of the cause upon the ground that the defendant had just become aware from reading the depositions of such persons, taken by the plaintiff but afterwards withdrawn, that they were material witnesses in its behalf.

Certain questions to a witness on cross-examination properly ruled out, because they did not relate to the matters gone into on the direct examination.

A special authority from the owner to look up property mislaid or lost by a common carrier, does not imply any authority to settle for the damages resulting from the carrier's neglect.

In an action against a railroad company for damages resulting from its negligence in transporting certain nursery stock, it was for the jury to determine upon the evidence whether the company was guilty of negligence, and whether the damaged condition in which the stock was afterwards found resulted from that negligence.

It is the duty of a railroad company, receiving goods for transportation, to exercise reasonable care in ascertaining from the directions upon them their place of destination; and if its road extends only a part of the way, to deliver the goods to the proper carrier, to be forwarded by the route indicated in the directions, or, in the absence of any direction, by the usual route.

In the absence of a voluntary appearance, a court of this state can acquire jurisdiction of a foreign corporation only in the manner pointed out by statute.

But a general appearance in the action by such a corporation, gives the court jurisdiction to render a personal judgment against it.

The principle that an objection to the jurisdiction of the court may be taken at any time, applies only to objections to its jurisdiction over the *subject matter* of the action.

The *owner* of goods injured by the negligence of a carrier should bring the action for damages therefor.

The *consignee* is presumed to be the owner in the absence of proof to the contrary.

The presumption of ownership which arises from an unqualified consignment, may be rebutted.

Goods were forwarded by the plaintiff from Whitewater in this state to F. & W. at Mount Carmel, Illinois, upon the following order: "Forward us the following bill of nursery stock to Bridgeport, Ill. Terms, our notes at six and twelve months. * * All the above stock to be properly packed and delivered at the railroad depot in Whitewater, Wis., free; freight and charges to be paid by us on delivery at Bridgeport, Ill." *Held*, that the words "delivered at the rail-

road depot in Whitewater, Wis., free," must be understood to mean merely that F. & W. were not to be at any expense for the packing of the goods or hauling them to the depot at Whitewater.

*Held*, further, that the delivery which was to change the ownership was the one at Bridgeport, Ill., upon which the consignees would be able to comply with the condition of the sale by giving their notes.

Where payment for goods is to be made in notes of the vendees, the property in the goods does not vest in the vendees until the giving of the notes.

APPEAL from the Circuit Court for *Dane* County.

Action for damages resulting from defendant's negligence in transporting nursery stock belonging to the plaintiff. The complaint alleges that the defendant is a foreign corporation having property within this state, and doing business therein; that on the 5th of April, 1861, it was, and still is, a common carrier &c.; that on that day, at Janesville in this state, the plaintiff delivered to it four boxes of nursery stock (particularly described) worth $1200, in good condition, the property of the plaintiff, each box having attached to it plain directions, as follows: "To be forwarded with care and despatch to E. Fox and R. E. Wright, Esq.'s, Bridgeport, Ill. For Mount Carmel, Ill. Care Ill. Central Railroad, Chicago;" that the defendant did not transport the boxes with reasonable diligence or dispatch to Chicago; that they did not reach that place until the 9th of said month of April, four days later than the proper time; that the defendant did not deliver them to the Illinois Central Railroad company, as directed, but negligently delivered them at Chicago to the Chicago, Alton & St. Louis R. R. Co., to be forwarded to a station on the road of said last mentioned company five or six miles from Chicago, also named Bridgeport; that the boxes were left at the Bridgeport last mentioned, and remained there until the 19th of said month of April, before the plaintiff could ascertain where they were, or forward them to their proper destination; that the Bridgeport to which the boxes were directed is a station on the Ohio & Mississippi R. R. in Illinois, about three hundred miles from Chicago, and about twenty-five miles from Mount

Carmel mentioned in the direction on the boxes; that the Illinois Central R. R. intersects the Ohio & Mississippi R. R. &c.; that the plaintiff had contracted to sell said nursery stock to E. Fox and R. E. Wright, and deliver it to them in good condition at Bridgeport on the Ohio & Miss. R. R. The complaint then alleges damages to the stock, and the extra expense incurred by the plaintiff in forwarding and disposing of the same, amounting to $771.21, for which judgment is demanded.

The answer, after a general denial, alleges that " after committing the said supposed grievances in the complaint mentioned, to wit, on the 18th of April, 1861, the defendant delivered to the plaintiff, and the plaintiff accepted $45 in full satisfaction of the damages mentioned in the complaint." On the 24th of February, 1862, J. W. D. Parker, Esq., attorney of record for the defendant, acknowledged service upon him of " copies of affidavits, rule and interrogations for taking the testimony of Elijah Fox, Robert E. Wright, William B. Ridgway and Henry Hendres, on commission to be issued to Edward B. Green, Esq., in behalf of the plaintiff, and notice of residence of said witnesses and commissioner." On the 8th of March, 1862, a commission was issued to said Green to take said testimony. No cross interrogatories were filed by the defendant.

When the cause was called, on the 20th of November, 1862, the defendant moved the court for a continuance, upon affidavits of J. W. D. Parker, Esq., its attorney of record, and Elliott Anthony, Esq., its general attorney, to the effect that no notice had ever been given the defendant of the *time* when the testimony of the witnesses above named would be taken upon commission; that affiants had only learned within a few days that the commission had been issued to and executed by said Green; that after affiants were informed that the plaintiff wished to take the testimony of said witnesses, defendant retained said Green as counsel to act for it in taking said testimony; that said Green, on the 3d of March, 1862, informed

the defendant that the plaintiff desired him to act as commissioner to take the deposition, but that he had declined to act, and had so notified the plaintiff; that the defendant then supposed a new commission would be sued out, directed to some other person, of which they would have due notice; that no notice had ever been served on the defendant by the clerk of said court that the testimony of said witnesses had been taken and returned to the court; that the defendant was thus taken by surprise by said depositions being on file; that the defendant had a valid defense, and had used due diligence to prepare for the trial; that it could not safely proceed to trial without the testimony of said Elijah Fox and Robert E. Wright, of Wabash county, Illinois, who, as defendant had that day learned from an inspection of their depositions on file, knew of matters which would prove a perfect defense to said suit. Attached to Mr. Anthony's deposition, as a part thereof, was a letter dated March 3d, 1862, from E. B. Green, Esq., to the general superintendent of the defendant's road, in which said Green stated that he was awaiting the return home of said Fox, believing that he could get some information from him that it would be well to communicate to said superintendent and the attorney of the company. The letter adds: "I was informed a few days since that I was appointed commissioner to take depositions in the case, but have written a letter to the parties declining on account of being retained by the railroad company."

The plaintiff thereupon withdrew said depositions; and the motion was then denied. The defendant subsequently renewed the motion on the ground that it appeared from the affidavits that certain persons therein named were material witnesses for the defendant, and that the evidence they would give was not known to it until shortly before the cause was called for trial. Motion denied.

The plaintiff then introduced testimony to sustain the allegations of his complaint. Among other things the plaintiff

testified that he sent said nursery stock to Fox & Wright upon their order; the property was his. He made a contract with them to furnish a certain amount of stock at the railroad station nearest to Mount Carmel, Ill.—Orville H. Congar, as a witness for the plaintiff, testified that he went to Chicago on the 17th of April; that on the 18th he found the trees, &c., on the side track of a railroad at a station on the Chicago & St. Louis R. R., four miles south of Chicago; that he asked at the Galena & Chicago depot whether they had received the boxes, and was told they had, and had delivered them at Bridgeport, four miles from Chicago; that the engineer went with him, and the boxes were taken back to Chicago, carried to the Illinois Central Railroad depot, and forwarded to Bridgeport on the 18th; that the boxes were all marked as stated in the complaint; and that the agent, Hatch, said they did not know of any other Bridgeport, and that it was their fault. On cross-examination, the witness said that he was sent by his brother (the plaintiff) to take the trees &c., under protest, and that he did not take them under protest. *Question:* " State whether, as agent for the plaintiff, you made a settlement with the defendant for the damages to these trees, and the detention of them? " Objected to by plaintiff, and ruled out. On further cross-examination, the witness stated that he received from the defendant's transportation agent $45 and a ticket to Janesville, for incidental expenses, such as fare to Chicago, board while there, telegraphing &c.; but that this did not include damages to the trees or the extra expense of carrying them. The plaintiff also introduced in evidence the order of Fox & Wright upon which the stock in question was furnished, the material part of which is stated in the opinion of this court. The rest of the plaintiff's testimony it is not deemed necessary to state. The defendant moved for a nonsuit, on grounds which will also appear from the opinion: and the motion was denied. The defendant introduced the testimony of experts to show that the trees were not properly

packed, and after the plaintiff, as a witness for himself, had given rebutting testimony on that point, the parties rested.

Verdict for the plaintiff; motion for a new trial denied, and judgment upon the verdict; from which the defendant appealed.

*Stevens & Lewis*, and *Elliott Anthony*, for appellant.

*Wakeleys & Vilas*, for respondent.

*By the Court*, COLE, J. The first objection taken in this cause is to the ruling of the court upon the application for a continuance. In the first instance, the application was founded upon the fact that the respondent had taken on commission considerable testimony to be used on the trial without the company's having any opportunity to file cross interrogatories. The attorneys of the company filed affidavits, in which they stated that they were taken by surprise to find that the commission had been executed; that they had used due diligence to prepare for trial in the view they had taken of the case until they found the testimony here. We shall not dwell upon the question, whether sufficient notice had been given of the taking of the testimony to authorize the respondent to use it on the trial, because the whole reason for a continuance upon the ground upon which it was asked, was removed by the respondent's withdrawing the depositions from the files and proceeding to trial without them. This is very clear. When it appeared that the respondent was willing to proceed to trial without these depositions, the application for a continuance was renewed upon the same affidavits.

That the circuit court very properly, under the circumstances, denied this second application, is very obvious. It is claimed that the court entirely overlooked the fact that it was stated in the affidavits that matters had come to the knowledge of the attorneys of the company from reading the depositions which were withdrawn, showing that Fox and Wright were material witnesses and would establish a perfect defense to the ac-

tion. But it fully appeared from the letter of Mr. Green, written from Mount Carmel, where those witnesses resided, some months before the trial, that he had been employed by the company to attend to the taking of testimony at that place. Green knew Fox, and says he believed he could get information from him which would be useful, or words to that effect. The agents of the company knew, then, for months before the trial, that Fox possessed some information upon the subject matter of the litigation, and by inquiring of him they could have readily learned what he and his partner Wright knew upon the subject. Yet it is said the agents of the company did not know that these persons were material witnesses until shortly before the case was called for trial. If they did not, they were grossly negligent in looking up their testimony and preparing the defense. So far from showing that diligence had been used to obtain the testimony of these witnesses, the direct contrary appeared. For this reason we are of the opinion that the second application for a continuance was devoid of merits.

Again, it is contended that the court erred in not permitting the company to show, on the cross-examination of the witness Orville H. Congar, that it had settled with him for all the damages resulting from the detention of the trees. There are several very sufficient answers to be given to this objection. In the first place, the questions asked on the cross-examination had no reference whatever to the matters gone into on the direct examination. It was new matter entirely, relating to the defense, and if the company wished to examine the witness upon that matter, it should have made the witness its own, and called him as such at the proper stage in the cause. But a still more conclusive answer to the competency of this proof is, that there was not a particle of evidence given or offered tending to show that the witness had the least authority from his brother to make any such settlement, if he did in fact attempt to make it. It abundantly appears from the case, that

this witness was sent down to Chicago to find the trees and forward them to the place of their destination. This was the extent of his authority as shown by his own testimony, and if he assumed to make a settlement for damages to the trees, it is very obvious that the act was wholly void, and did not bind the principal. We suppose this to be too familiar a rule of law to require any illustration or further comment. Therefore, until it was shown that the agent had some authority to make such a settlement, it was quite immaterial whether he made one or not. It could not, with any propriety, be said that a special authority to look up property mislaid or lost by a common carrier implied the authority to settle for all damages resulting from the neglect of the carrier to perform his contract. And upon this ground the questions asked the witness on the cross-examination, whether he had made a settlement with the company or not, were clearly inadmissible.

The question whether the company was guilty of carelessness in carrying and transporting the trees according to the direc tions upon the boxes, or whether the delay of several days at Chicago did or did not cause the damage complained of, was clearly a matter for the jury to determine from the evidence. It is suggested that the mistake in sending the trees to Bridgeport near Chicago, instead of "Bridgeport, Ill.," was caused by the imperfect marking of the boxes. It was of course the duty of the railroad company, receiving the goods for transportation, to exercise a reasonable degree of care in ascertaining, from the marking upon the boxes, the place of destination, and if its road did not extend but part of the way, it should have delivered the goods to the proper company to be forwarded by the usual road. In this case the boxes were marked "Bridgeport, Ill., for Mt. Carmel, Ill., care Ill. Central Railroad," and it is not pretended that they were delivered to the Illinois Central road until after a delay of several days. The liability of the defendant did not cease until it had deliv-

ered the property to the Central Railroad Company according to the usual course of business.

This brings us to the motion for a nonsuit, which was based upon two grounds: 1. That the plaintiff had failed to sustain the allegations of his complaint to the effect that the defendant was a foreign corporation having property in this state, and that the cause of action arose within the state ; and 2. That the action should have been brought in the name of the consignees of the goods.

All that it is necessary to say upon the first point is, that though this was an action against a foreign corporation, yet as the defendant made a general appearance in the cause by putting in an answer and going to trial upon the merits, this, within all the authorities, gave the court jurisdiction of the defendant. Of course, if there had been no voluntary or general appearance, then the court could have acquired jurisdiction of the corporation only in the manner pointed out in the statute. But because there was such an appearance, the court acquired jurisdiction and could render a personal judgment against the defendant. It is said that the question of jurisdiction was not waived by an appearance, because an objection to the jurisdiction of the court can be taken at any time. Undoubtedly the objection that a court has not jurisdiction of the subject matter of the suit can be raised at any time, but a party cannot, after appearing in a cause and going to trial upon the merits, then say that the court never acquired jurisdiction of the person. We were referred to a great many authorities upon this point, but we do not find any that hold that a general appearance in the cause does not give the court jurisdiction of a foreign corporation. For this reason the cases cited by counsel are all inapplicable.

We proceed to notice the only remaining objection which we deem it necessary to consider, namely, that the action should have been brought by the consignees and not by the respondent. It is a conceded proposition on both sides, that the own-

er of the goods, whether consignor or consignee, should bring
the suit for an injury caused by the negligence of the carrier.
And it is further admitted, that when there is no proof as to
the ownership of the property, the consignee is presumed to be
the owner of it, and is the proper party to sue for any injury
to it. The presumption of ownership which results from an
unqualified consignment, may be rebutted ; and whenever it
appears that the person suing is the real owner, there is an end
of the objection that the action shoud be brought in the name
of the consignee. This principle seems to be well established
by the authorities cited on the brief of the counsel for the re-
spondent. See also a very interesting discussion as to
who may bring suit for a breach of duty by the carrier, by C.
J. SHAW in *Blanchard vs. Page*, 8 Gray, 281. In this case we
are fully satisfied that the respondent was the real owner of
the property at the time of the injury, and is therefore the
proper party to bring the action. This we think appears from
the written order itself. The material part of the order reads
as follows : " Mr. H. A. Congar, Whitewater, Wis., will please
forward us the following bill of stock immediately, if the
weather will permit, to Bridgeport, Illinois. Terms, our notes
at six and twelve months, given jointly, with interest. 60,000
apple grafts, &c.        *        *        *        *        All the above
stock to be properly packed and delivered at the railroad de-
pot in Whitewater, Wisconsin, free ; freight and charges to be
paid by us on delivery at Bridgeport, Illinois. Sum total of
stock, $1,200. (Signed) E. FOX, R. E. WRIGHT." Fox and
Wright lived at Mount Carmel, Ill., some three or four hund-
red miles from Whitewater, the residence of the respondent.
The goods, it will be seen, were to be delivered at Brigdeport,
—which, it appears, was the nearest railroad station to Mount
Carmel,—and were to be paid for by the joint notes of Fox
and Wright, payable in six and twelve months. It is true, the
order says the " stock is to be properly packed and *delivered*
at the railroad depot in Whitewater, free," &c., but from this

we understand that Fox and Wright were to be at no expense for the packing of the goods or hauling them to the depot at Whitewater. But the controlling circumstance which convinces us that the title to the property would not pass upon the delivery at Whitewater is, that it was to be paid for in the notes of the vendees. Change of ownership and payment were to be concurrent acts. And where, as in this case, payment was to be made in the notes of the vendees, we suppose it well settled that the interest does not vest until the giving of the notes. As already observed, the parties resided at a distance from each other of three or four hundred miles. Is it probable that they intended the sale should be complete on the delivery of the property at Whitewater, whether the notes were ready for delivery or not? If so, why was anything said about delivering the goods at Bridgeport, the vendees paying railroad freight and charges to that place? For if the general property passed to the vendees on delivery at Whitewater, then the goods were at their risk, and of course they would be liable for freight. We think the delivery which was to change the owership was the one at Bridgeport near the residence of the vendees, when they would be able to comply with the condition of the sale by executing and giving their notes. And this construction of the order is strengthened and sustained by every fact and circumstance testified to by the witnesses.

We think these remarks sufficiently dispose of the material questions in the cause.

Judgment of the circuit court affirmed.