JOAB IRISH

*vs.*

THE MILWAUKEE AND ST. PAUL RAILWAY CO.

In the absence of any special agreement or custom which enters into the contract, where goods are delivered to a common carrier for transportation, directed to a point beyond the terminus of his route, between which and the place of destination of the goods there are other succeeding connecting lines of transportation by common carriers, the intermediate carrier is bound to transport the goods safely to the end of his route, and deliver them to the next carrier on the route beyond, and in such case he is not relieved from his liability as insurer of the goods by simply unloading the goods at the end of his route, and storing them in a warehouse, without delivery to the next carrier.

If the defendant relies upon any special custom in regard to the delivery of the goods to the succeeding carrier, or affecting such delivery, the burden of proof is upon him to establish such custom.

This is an appeal by the plaintiff from an order of the dis-

trict court for Olmsted county, denying a motion for a new trial.   The case is fully stated in the opinion.

CHARLES C. WILLSON, for Appellant, cited (in addition to the cases cited and relied upon in the opinion,) *Woods vs. M. & St. P. Ry. Co.*, 27 *Wis.*; *Angle vs. M. & M. Ry. Co.*, 9 *Iowa*, 488.

BIGELOW, FLANDRAU & CLARK, for Respondent, cited *Converse vs. Norwich & N. Y. Trans. Co.* 33 *Conn.* 177; *Alexander vs. R. R.*, 20 *Ill.* 23; *Richards vs R. R.*, *Id.* 407; *Davis vs. R.R.*, *Id.* 412; *Scott vs. R. R.*, 42 *Ill.* 132; *McCool vs. R. R.*, 26 *Ind.* 140; *Banserner vs. R. R.*, 25 *Ind.* 434; *Ayres vs. R. R.*, 5 *Dutcher*, *N. J.* 393; *Norway Plains Co. vs. R. R.*, 1 *Gray*, 263; *Denny vs. R. R.*, 13 *Gray*, 481.

*By the Court.*—McMILLAN, J.—It appeared upon the trial of the cause from the testimony upon the part of the plaintiff, which was uncontradicted, that the plaintiff delivered to the defendant at its depot in Milwaukee, for shipment, certain household goods, specified in the evidence, of the value of about $250, marked "Ransom Irish, Rochester, Minnesota." It is admitted by stipulation in the case that the goods arrived at LaCrosse at 12 o'clock, 45 minutes, p. m., on the 13th of May, 1870, and were then placed in a warehouse by the defendant on the 13th of May, 1870, and were destroyed by fire, while in said warehouse, at one o'clock in the morning of the 15th of May, 1870, and that said fire was not caused by lightning.   It was also admitted by the defendant upon the trial that, at the time mentioned in the stipulation, there were steamboats plying from LaCrosse to Winona, and cars running from Winona to Rochester, which were common carriers of

goods like those in controversy. The plaintiff did not accompany the goods.

Upon this state of facts, at the close of plaintiff's case, the court, on defendant's motion, dismissed the action, on the ground that plaintiff had failed to establish a cause of action. The plaintiff subsequently moved for a new trial, which the court denied, and from the order denying such motion the plaintiff appealed.

The question to be determined is, whether the liability of the defendant as a common carrier of the goods terminated at the time the goods were deposited in the warehouse at LaCrosse. If it did, the defendant then became, and at the time of the loss was a warehouseman only, and, no negligence upon its part being shown, is not liable; otherwise, it was an insurer of the goods, and is liable.

In *Lawrence vs. Winona & St. Peter R. R. Co.*, 15 *Minn.* 390, it is said by the chief justice, delivering the opinion of the court, in reference to the liability of an intermediate carrier for the loss of goods shipped upon a railroad, that although as a general rule the intermediate carrier " is not liable beyond his own route, yet, if at the end of the route the carrier stores the goods in his own warehouse, without delivery or notice, or attempt to deliver to the next carrier, he is not, by such mere act of storage, released from liability as a carrier."

If the decision of that point was not necessary in the case in a sense which renders it authority upon the question, as the respondent assumes, it would seem that the decision of the case required an examination of the general rule of liability of an intermediate carrier, and rendered the decision of the point, or the assumption of that position, necessary. The decision would therefore seem to have been proper. However that may be, the conclusion, to which we are led after a full

re-examination and reconsideration of the question, is in entire harmony with the conclusion stated in that case.

The authorities upon the question under consideration are conflicting ; one class of them applying to intermediate carriers the same rule applied by them to the final carrier on the route, namely, that the liability of the carrier as an insurer terminates when the goods are carried to the end of his route, and there deposited by the carrier in a warehouse. Another class of the authorities holding that, in the absence of any special agreement or custom, the obligation of the carrier is to transport the goods over his own route and deliver them to the succeeding carrier.

We do not deem it necessary at this time to review the decided cases upon this question. It may suffice to say, we think that the better rule as to the obligation of intermediate carriers is that, in the absence of any special agreement or custom which enters into the contract, where goods are delivered to a common carrier for transportation, directed to a point beyond the terminus of his route, between which and the place of destination of the goods, there are other succeeding connecting lines of transportation by common carriers, the intermediate carrier is bound to transport the goods safely to the end of his route and deliver them to the next carrier on the route beyond, and in such case he is not relieved from his liability as insurer of the goods, by simply unloading the goods at the end of his route and storing them in a warehouse, without delivery or notice, or any attempt to deliver to the next carrier. This is substantially the rule laid down by the court of appeals of New York in *McDonald vs. Western Railroad Corporation,* 34 *New York,* 497.

The following additional authorities support, more or less directly, the same rule : *Goold vs. Chapin,* 20 *N. Y.* 259 ; *Congar vs. The Chicago & Galena Union R. R. Co.* 17 *Wis.* 477 ; *Her-*

*mann and another vs. Goodrich*, 21 *Id.* 536 ; *2 Redfield on Rail-ways*, § 157, *sub div.* 12 *and* 13 ; *2 Parsons on Contracts*, 197 ; *.Mich. Cent. R. R. Co. vs. The Minn. Sp. Manuf. Co. U. S. Sup. Court, Dec. T.*, 1872 (*reported in Chicago Legal News*).

Smith, J., in his opinion in *McDonald vs. Western Railroad Corporation*, (*suprá*,) supports this rule by a line of argument which commends itself to us as very forcible. "The defendants were intermediate carriers. Their line of transportation was one of several, which together formed a continuous route, over which goods were transported for hire. We may judicially take notice of the fact that the vast business of inland transportation of goods in this country is carried on mainly upon similar routes, formed by successive connecting lines of transit belonging to different owners, each of whom carries the goods over his own line and delivers them to the next, who in his turn takes them on till they reach the place of final destination.

"Now, it is apparent that to carriers thus situated, and to goods thus transported, the policy of the common law rule of liability applies with peculiar force. It is a public policy, springing from the public nature of the employment of carriers, and rendering their good conduct a matter of importance to the whole community. Many of the routes of transportation in this country, formed in the manner above stated, extend over thousands of miles. Their proprietors invite and receive goods for transportation upon the promise, express or implied, that they shall be carried safely to the place of delivery. The owner loses sight of his goods when he delivers them to the first carrier, and he has no means of learning their whereabouts till he or the consignee is informed of their arrival at the place of destination. At each successive point of transfer from one carrier to another, they are liable to be placed in warehouses, there, perhaps, to be delayed by the

Irish v. The Milwaukee and St. Paul Railway Co.

accumulation of freight, or other causes, and exposed to loss by fire or theft, without fault on the part of the carrier or his agents. Superadded to these risks, are the dangers of loss by collusion, quite as imminent while the goods are thus stored at some point unknown to the owner, as while they are in actual transit. As a general rule, the storing under such circumstances, should be held to be a mere accessory to the transportation, and the goods should be under the protection of the rule, which makes the carrier liable, as an insurer, from the time the owner transfers their possession to the first carrier till they are delivered to him at the end of the route."

One of the principal purposes and effects of the English rule of the carrier's liability is to give the owner of goods shipped from one place to another the benefit of this uninterrupted liability of the carrier as insurer throughout the entire route, whatever number of carriers may intervene. In the modification of the English rule, adopted by the American courts, it was not intended, it seems to us, to take from the owner of goods thus shipped this uninterrupted security of insurance, but to relieve the first carrier from such responsibility for other carriers on the route, and to distribute to each carrier his own share of such responsibility. 2 *Redfield on Railways*, § 157, *sub. div.* 13.

What special facts will constitute an exception to the rule, and restrict the carrier's liability, is not now before us, and upon that point we express no opinion whatever; nor do we consider or determine under what circumstances or in what cases, if any, storage of the goods by an intermediate carrier, with notice to the succeeding carrier, will change the liability of the former from that of an insurer to that of a mere warehouseman. If the defendant relied upon any special custom in regard to the delivery of the goods to the succeeding carrier, the burden of proof was upon it to establish such custom.

Irish v. The Milwaukee and St. Paul Railway Co.

In the case at bar there is no evidence of any special custom or agreement touching the delivery of the goods. There is no pretence of any notice to the connecting carrier, nor any evidence that the succeeding carrier was not ready and willing to receive the goods upon their arrival at La Crosse, nor that any notice was given to such carrier of the arrival of the goods, nor any fact tending to show that there was any necessity for storing the goods, or that it was not solely for the convenience of the defendant, and in its own warehouse. The case we think is distinguishable from *Garside vs. Trent and Mersey Navigation Co.* 4 *Term, R.* 581, which we have heretofore had occasion to consider and comment upon. *Lawrence vs. Winona & St. Peter R. R.* 15 *Minn.* 390.

Under the rule above laid down by us the defendant was clearly liable as a common carrier, and not as a warehouseman, and the loss of the goods not having been occasioned by act of God or the public enemy, is responsible therefor.

The order denying a new trial is reversed, and a new trial ordered.