William Condon v. Marquette, Houghton & Ontonagon Railroad Company.

*Destruction of freight pending transfer from one carrier to another.*

A common carrier's liability for freight that is to be transferred to another carrier continues until it is so transferred, or at least until such notification has been given to the other carrier as amounts to a tender of delivery. And if the first carrier merely stores the freight in a warehouse of its own where the other is in the habit of taking it at its convenience, and the freight while so stored is destroyed, the first carrier is answerable for its value.

Error to Houghton.   (Steere, J.)   Oct. 8.—Nov. 19.

Case.   Defendant brings error.   Affirmed.

*W. P. Healy* for appellant.   The rule that an intermediate carrier is liable for the goods he carries until they are delivered to the next carrier (*Mich. Cent. R. R. v. Mineral Springs Mfg. Co.* 16 Wall. 318; *Mills v. Mich. Cent. R. R.* 45 N. Y. 622) is repudiated in *Mich. Cent. R. R. v. Lantz* 32 Mich. 504; he is liable only as warehouseman: *Garside v. Trent & Mersey Navigation Co.* 4 Term 581; *McDonald v. Western R. R. Cor.* 34 N. Y., 502; *Rawson v. Holland* 59 N. Y. 615; which he may become: *Buckley v. G. W. Ry.* 18 Mich. 121; as to reasonable time for making transfer, see *Druse v. Wheeler* 26 Mich. 189; *Hedges v. H. R. R. R. Co.* 49 N. Y. 223; *Bell v. St. Louis & Iron Mountain R. R.* 6 Mo. App. 363.

*Chandler, Grant & Gray* and *T. L. Chadbourne* for appellee.   An intermediate carrier's liability for goods continues until they are delivered to the next: *Irish v. Milwaukee & St. P. R. R.* 19 Minn. 376; *Louisville &c. R. R. v. Campbell* 7 Heisk. 253; *Mobile & Girard R. R. v. Copeland* 63 Ala. 219; *Packard v. Taylor* 35 Ark. 402; *Erie R. R. v. Lockwood* 28 Ohio St. 358; *Foy v. Troy & Boston R. R.* 24 Barb. 382; *Rawson v. Holland* 59 N. Y. 611; *McDonald v. Western R. R.* 34 N. Y. 497; *Nashua Lock Co. v. W. & N. Ry.* 48 N. H. 339; *Ill. Central R. R. v. Copeland* 24 Ill. 332; *Ill. Central R. R. v. Johnson* 34 Ill. 389; *Angle v.*

*Miss. & Mo. R. R.* 9 Ia. 487; *Conkey v. Milw. & St. Paul Ry.* 31 Wis. 619; *Ayers v. Western R. R.* 14 Blatch. 9.

COOLEY, C. J.   The plaintiff shipped goods from New York by the New York Central & Hudson River Railroad Company, directed to himself at Hancock, Michigan, and they were carried in succession by connecting carriers until they were delivered by the Chicago & Northwestern Railway Company to defendant at Negaunee on March 12, 1883. The goods were carried by defendant over its road to L'Anse, where they arrived March 13, 1883, and were placed in defendant's warehouse.   There they remained until March 20, 1883, when they were destroyed by an accidental fire. L'Anse was the terminus of railroad transportation.   From thence to Hancock goods were carried in boat during the season of navigation, and by teams for the remainder of the year, by a carrier known as the L'Anse & Houghton Overland Transportation Company, which occupied for its purposes at L'Anse the warehouse of the defendant.   It seems to have been the customary mode of business for the receipts of goods to be entered at the warehouse upon books of the defendant which were open to inspection by the L'Anse & Houghton Overland Transportation Company, and which were regularly inspected by the agent of that company to ascertain what goods were to be taken by it.   That company was then accustomed to take the goods for Hancock and other places on its line, load them in sleighs or other vehicles at the warehouse, and then receipt them to the defendant.

When the goods of the plaintiff were received by defendant no notice was given to him, nor was the attention of the agent of the Transportation Company called to them, or any request made that they should be removed.   They simply remained in the warehouse, without action by any one in respect to them until the fire took place.   The goods having been destroyed, plaintiff claimed from the defendant payment of the value, and that being declined, the present suit was instituted.

The first count of the declaration charged the defendant

as common carrier with the duty to carry the goods over its line to L'Anse, and there deliver them to the L'Anse & Houghton Overland Transportation Company, and the breach of duty alleged was the failure to deliver to that company. The trial judge instructed the jury that if the goods were shipped from New York, consigned to or marked for the plaintiff at Hancock, Michigan, and came into the hands of the defendant from the Chicago & Northwestern Railway Company to be carried by defendant in the usual course of its business to L'Anse, there to be delivered to the L'Anse & Houghton Overland Transportation Company for transportation to Hancock, then the defendant received such goods as a common carrier, and remained such common carrier during the transportation of the goods to L'Anse, and after their arrival there for such reasonable time as, according to the usual course of business with the L'Anse & Houghton Transportation Company, would enable defendant to deliver the goods to that company ; and no delay in taking goods on the part of the Transportation Company, incident to the usual course of business between the two companies, would exonerate the defendant from its liability as a common carrier. It would be the duty of the defendant to deliver or offer to deliver the goods to the L'Anse & Houghton Transportation Company to be transported to Hancock ; and if the goods were not so delivered or offered to be delivered, plaintiff was entitled to recover.

Under this instruction the plaintiff had judgment, and the defendant brings error.

The question which the instruction presents is one upon which the authorities are somewhat divided. It received careful attention at the hands of the New York Court of Appeals in *McDonald v. Western Railroad Corporation* 34 N. Y. 497, where several opinions were delivered. The facts upon which the decision was to be made were in all respects similar to those now before us, and the judges were unanimous in holding that the railroad company was liable. Wright, J. said : " The goods had been received by the defendants at Chatham, to be transported to Binghamton by

way of the Erie and Chenango canal. Their obligation, therefore, was to carry the goods safely to the end of their road and deliver them to the next carrier on the route beyond. A carrier, in such case, does not release himself from liability by simply unloading the goods at the end of his route, and placing them in his own storehouse, without delivery or notice to, or any attempt to deliver to, the next carrier." Hunt, Justice, in a concurring opinion, referring to *Ladue v. Griffith* 25 N.Y. 364 as a somewhat similar case, said : " The defendants in the present case did no act indicating that they had renounced the liability of a carrier. They simply unloaded and deposited the goods in their warehouse. Had this deposit been made in the warehouse of a company engaged in canal transportation westwardly, it would have been an act of great significance. But here the fact is expressly found that it was the custom of the further carrier to take the goods from the defendants' depot. The liability of the further carrier did not commence until he removed the goods from the defendants' warehouse. The deposit, therefore, by the defendants in their own warehouse did not afford any evidence of a renunciation of the carrier's liability." And he added that the deposit of the goods in the warehouse was to be considered a mere accessory to the carriage by defendant, and that their liability as carrier was therefore unbroken.

This decision was approved as sound and followed as authority in *Mills v. Michigan Cent. R. R. Co.* 45 N. Y. 622, and it is undoubtedly the settled law of New York at this time. The same doctrine was laid down in *Conkey v. Milwaukee &c. R. R. Co.* 31 Wis. 619, in a forcible opinion by Chief Justice Dixon, and also in *Irish v. Milwaukee &c. R. R. Co.* 19 Minn. 376: s. c. 18 Am. Rep. 340, which cites with approval the case in 34 N. Y. Reports. The like doctrine also appears to be recognized in *Erie Railroad Co. v. Lockwood* 28 Ohio St. 358 ; *Brintnall v. Saratoga &c. R. R. Co.* 32 Vt. 665 ; *Packard v. Taylor* 35 Ark. 402 ; and *Louisville &c. R. R. Co. v. Campbell* 7 Heisk. 253. It was also affirmed in *Michigan Cent. R. R. Co. v. Manufacturing Co.* 16 Wall. 318. This last case expresses views not in harmony with the

opinion of this Court respecting a certain clause in the charter of the Michigan Central Railroad Company as expressed in *Michigan Central R. R. Co. v. Hale* 6 Mich. 243, and *Same Company v. Lantz* 32 Mich. 502; yet, as the question now under consideration was considered and decided by the court upon common-law principles, the conflict of views on the question of construction is of no importance in this case.

We think these cases lay down a rule which is just to the shippers of goods, and not unreasonably burdensome to carriers. The shipper delivers his goods to a carrier, who becomes insurer for their safe transportation; and if the operations of one carrier cover a part only of the line of transit, and another is to receive the goods from him, the shipper has a right to understand that the liability of an insurer is upon some one during the whole period. The duty of the one is not discharged until it has been imposed upon the succeeding carrier; and this is not done until there is delivery of the goods, or at least such a notification to the succeeding carrier as, according to the course of the business, is equivalent to a tender of delivery. There is nothing in this which is burdensome to the carriers; for this is the customary method in which the business is done; and the rule only requires that the customary method shall be pursued without unreasonable delay or negligence.

The connecting carriers in this case appear to have established a custom of their own, under which actual delivery of the goods or notice to take them was dispensed with, and the one was to ascertain from the books of the other what goods were ready for reception and further carriage. This, as between themselves, was well enough while it worked well; but it was an arrangement to which the plaintiff was not a party, and the defendant could not by means of it relieve itself of any liability which duty to the plaintiff imposed. And it was clearly its duty to the plaintiff, as we think, to relieve itself of the responsibility of the goods remaining for an unreasonable time in its warehouse; and to do this, it was necessary that the responsibility be transferred to the carrier next in line. But the mere permission to

inspect its books and take whatever was ready for carriage would not do this: there should have been distinct notice which would apprise the other carrier that defendant expected the removal of the goods.

In this case there were no facts indicating a renunciation, as to these goods, of the liability of common carrier by the defendant, or that it was supposed by the agents of the defendant that that character had been exchanged for any other. If it ever was, it must have been at the moment the goods were received; for nothing took place afterwards to change the relation of the defendant to the goods until the fire took place. But we are not ready to assent to the doctrine that a railroad company, as to goods transported by it, ceases to be carrier the moment the goods are received at its warehouse. We do not think that is the law, or that it ought to be.

The judgment should be affirmed.

CHAMPLIN and SHERWOOD, JJ. concurred.

CAMPBELL, J.   In this case it is admitted by the undisputed facts that the property in question had been in defendant's warehouse for a longer time than was generally necessary for the removal of goods by the ultimate carrier, and that the failure was due to a lack of means of removal in the latter. It also appears that the property was in a warehouse from which the last carrier always took it without any further ceremony, and that this carrier was always informed by inspection of the way-bills and knew of the goods being ready for removal. I think that under such circumstances defendant no longer remained responsible as carrier, but became subject to no more than a warehouseman's responsibility, as soon as the last carrier had actual notice and could have removed them, and that respondent is not to be prejudiced by the lack of facilities in that carrier, who had the same means of access to and control over the goods. Such seems to me the purpose of our statute, which does not declare or provide that the liability of warehouseman for goods await-

ing delivery shall not arise when the real duties of carrier have been fulfilled, but merely requires that the responsibilities attaching to a carrier shall not be lessened while that relation exists.