H. T. BENNITT, Respondent, v. THE MISSOURI
PACIFIC RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, November 10, 1891.

1. Common Carriers: EXEMPTION FROM COMMON-LAW LIABILITY.
It is questioned whether, even in the absence of a prohibitive
statute, an agreement in a bill of lading exempting the carrier
from his liability at common law is binding, unless it is supported
by a special consideration.

2. ——: TERMINATION OF CARRIER'S RATE. A bill of lading for the
transportation of goods from Hillsboro. Texas, to Galveston, in the
same state, and for the delivery at the latter place to the consignee
or a connecting carrier, is not a contract for carriage beyond that
place, notwithstanding that it guarantees a through rate of freight
to a town in Connecticut, which is named in it as the ultimate
point of destination of the goods.

3. Practice, Trial: INCONSISTENT POSITIONS. When a consignor
sues a carrier for a loss of the goods carried, and predicates his
claim upon the theory that the transit was to end at a given point,
and, therefore, lay wholly within a certain state, the defendant
carrier is not precluded from claiming that he had carried the
goods to said point, and had ceased to hold them as a carrier,
by the fact that he had pleaded in his answer that the transit con-
tracted for extended beyond said point and state.

4. ———— : TERMINATION OF LIABILITY AS CARRIER. A carrier holds goods as such, and not as a bailee, while he holds them for delivery to a succeeding carrier ; and, although the connecting carrier refuses, or unreasonably delays, to receive them, the first carrier will still hold them as carrier until, by warehousing them, or otherwise, he does some unequivocal act indicative of a purpose to change his office from that of a carrier for transportation to that of a mere custodian for safekeeping. So long as he holds the goods in his vehicles of transportation, awaiting the pleasure, the convenience or the necessities of the succeeding carrier, his liability as carrier continues.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

*H. S. Priest* and *H. G. Herbel*, for appellant.

( 1 ) The court erred in overruling the defendant's demurrer to the evidence and motion for a new trial. *Coates v. Express Co.*, 45 Mo. 241 ; *Ryan v. Railroad*, 65 Tex. 13 ; *Railroad v. Railroad*, 37 Fed. Rep. 571 ; *Whiteworth v. Railroad*, 87 N. Y. 417 ; *Railroad v. Daniels*, 32 Am. & Eng. R. R. Cases, 480 ; *Railroad v. Grate Co.*, 9 S. E. Rep. 600 ; *Welsh v. Railroad*, 41 Conn. 333 ; *Stanley v. Railroad*, 100 Mo. 438 ; *Railroad v. Park*, 1 Tex. App. ( White & Wilson's Civil Cases ) secs. 332, 335 ; *Railroad v. Harris*, 1 Tex. App. 1260 ; *Railroad v. Galewood*, 14 S. W. Rep. 913 ; *Railroad v. Davis*, 4 Tex. Law. Rev. 179 ; *Railroad v. Adams*, 14 S. W. Rep. 666 ; *Railroad v. Tisdale*, 11 S. W. Rep. 900 ; *Platt v. Railroad*, 32 Am. & Eng. R. R. Cases, 530 ; *Witting v. Railroad*, 14 S. W. Rep. 743 ; *Davis v. Railroad*, 89 Mo. 340 ; *Read v. Railroad*, 60 Mo. 199 ; 44 Ark. 208 ; *Deming v. Railroad*, 21 Fed. Rep. 25 ; *Bell v. Railroad*, 6 Mo. App. 368. ( 2 ) The court erred in refusing to make the declarations of law requested by defendant. See authorities under point 1, *supra*.

*Sidney F. Andrews*, for respondent.

The validity of the terms of the contract of affreightment, or bill of lading, is to be determined by and under the laws of the state of Texas. The contract of carrier was not only made and entered into in the state of Texas, but was also, so far as the defendant is concerned, to be performed there. *Armstrong v. Railroad*, 2 P. & B. (N. B.) 445; *Myric v. Railroad*, 107 U. S. 102; *Moor v. Henry*, 18 Mo. App. 41; *Loomis v. Railroad*, 17 Mo. App. 341; *Wheeler v. Railroad*, 3 Mo. App. 359; *Snider v. Express Co.*, 63 Mo. 376; *Ort v. Railroad*, 31 N. W. Rep. (Minn.) 519; *Heiserman v. Railroad*, 16 Am. & Eng. R. R. Cases, 46. But assuming that the contract of carriage was to be performed in Connecticut, yet the *lex loci contractus* governs the construction and validity of the contract. Exemption must be lawful where made. *Parks v. Ins. Co.*, 26 Mo. App. 511; *Golson v. Evert*, 52 Mo. 260; *Flato v. Mulhall*, 72 Mo. 522; *Railroad v. Tranic*, 68 Tex. 314; *Railroad v. Moody*, 71 Tex. 615; *Penn. Co. v. Fairchild*, 99 Ill. 260; *Bank v. Shaw*, 61 N. Y. 283; *Hale v. Nav. Co.*, 15 Conn. 539; *Robinson v. Despatch Co.*, 45 Iowa, 470; *Railroad v. Cotton Mills*, 81 Ga. 522. For a late and full discussion of this question, see *Steam Co. v. Ins. Co.*, 129 U. S. 447; *Hartman v. Railroad*, 39 Mo. App. 88. ( 2 ) Under the laws of the state of Texas, the stipulation in the bill of lading exempting defendant from loss by fire is void. R. S. Tex., art. 278. ( 3 ) Irrespective of said provision in the Revised Statutes of Texas, said fire exemption clause contained in this contract of affreightment is void at common law, because it is unreasonable, unjust and without consideration. *McFadden v. Railroad*, 92 Mo. 343; *Hart v. Railroad*, 112 U. S. 331; *Railroad v. Gilbert*, 12 S. W. Rep. 1018; 2 Am. &. Eng. Ency. of Law, p. 819.

THOMPSON, J.—This was an action for damages, predicated upon the common-law liability of the defendant as a common carrier, for the destruction by fire of thirty-nine bales of cotton committed to the defendant for transportation as such carrier. The case was tried before the court sitting as a jury, and there was a finding and judgment for the plaintiff, from which the defendant prosecutes this appeal.

The cotton which was destroyed was a part of two different consignments, which were received by the defendant under contracts of carriage hereafter set out, the only difference between the contracts in the two cases being the mark upon the goods and their place of ultimate destination. As the goods which were lost were subjects of these two different bills of lading, the plaintiff drew his petition in two counts as for two different consignments. His petition is not, however, a petition upon the special contract of carriage, but is a petition upon the common-law liability of the defendant as a common carrier. So far as its recitals are material, they are that the cotton was committed by one Roberts to the defendant as a common carrier, at its station at Hillsboro in the state of Texas, consigned in the one case to the order of C. E. Phillips, cashier, Greenville, Connecticut, and in the other case to the same order at Norwich, Connecticut; that "the defendant, as such carrier, received the same, to be by it safely carried for a reasonable consideration to be paid it by the plaintiff, to Galveston, in the state of Texas, to be there delivered to the consignee or a connecting carrier; that the defendant did not safely carry and deliver said fifty bales of cotton as it had agreed to do; but that on the contrary, while said cotton was being carried by defendant, twenty bales thereof, of the value of $882.31, were through and by reason of defendant's carelessness and negligence consumed by fire, and wholly lost to the plaintiff." The second count contains similar averments.

The answer contains a paragraph appropriate to each count of the petition, averring that the said fifty bales of cotton were received by the defendant at his station at Hillsboro, in the state of Texas, on the twenty-second day of October, 1887, to be transported by it from said station to the town of Greenville in the state of Connecticut, in the one case, and to the town of Norwich in the state of Connecticut, in the other case, under and by virtue of a certain bill of lading, a true copy of which is filed therewith and made a part of the answer. The defendant further avers that said bill of lading, among other things, contains a clause as follows:

"The cotton aforesaid may pass through the custody of several carriers before reaching its destination, and it is understood, as a part of the consideration for which the said cotton is received, that the exceptions from liability made by such carriers, respectively, shall operate in the carriage by them respectively of the said cotton, as though inserted herein at length, and especially that neither of said carriers, or this company, shall be liable for loss or damage of any kind occasioned by delays from any cause, or change of weather, or for loss of damage by *fire*, or for loss or damage on seas, lakes, canals or rivers."

The defendant further avers that the bales of cotton, so received by it, for which this action is brought, "were destroyed by fire." "Therefore, defendant says that, under and by virtue of the provisions of said bill of lading above set out, it is absolved from any liability for the loss and destruction of said cotton by fire, and for failure to deliver the same."

To this answer the plaintiff filed a reply, denying that the defendant undertook or agreed to transport the cotton from Hillsboro, in the state of Texas, to Greenville, in the state of Connecticut, but averring that, under and by virtue of the bill of lading mentioned, the

defendant agreed to transport the cotton from Hillsboro, and to deliver the same at Galveston in the state of Texas, thus repeating the allegation of his petition. The reply then continued as follows :

"And for a further reply, plaintiff avers that the contract entered into by him with defendant for the transportation of said cotton was made, and was to be wholly performed, by the said defendant within the state of Texas, and the validity thereof is to be determined by and under the laws of the state of Texas; and plaintiff further avers that, by virtue of the laws of the aforesaid state, to-wit, article 278, of the Revised Statutes thereof, which is as follows, viz.:  'Railroad companies and other common carriers of goods, wares and merchandise, for hire, within this state, on land or in boats or vessels on the waters entirely within the body of this state, shall not limit or restrict their liability, as it exists at common law, by any general or special notice, or by inserting exceptions in the bill of lading, or memorandum given upon the receipt of the goods for transportation, or in any manner whatever, and no special agreement made in contravention of the foregoing provisions of this article shall be valid.'  Said agreement contained in said bill of lading, set up by defendant as a second defense to plaintiff's first count, is contrary to the provisions thereof, and, therefore, void and of no effect, and does not release defendant from its liability to the plaintiff for the loss of the said cotton, as therein averred by defendant.

"And the plaintiff further denies the validity of the stipulation contained in said bill of lading, pleaded by defendant as exempting it from 'loss by fire,' because, as plaintiff avers, the same is unreasonable, unjust and wholly without consideration."

The reply also contains a second paragraph, applicable to the second paragraph of the answer, which relates to the consignment of the cotton, the ultimate

destination of which was Norwich, Connecticut, and which is in the same language as that above set out.

The parties agreed upon a statement of facts, which the plaintiff put in evidence as his case. The facts thus agreed upon were: That the plaintiff is the proper party plaintiff; that the thirty-nine bales of cotton sued for were received by the defendant at its station at Hillsboro, Texas, to be transported by it under the bills of lading filed in the case; that the cotton was destroyed by fire on the defendant's cars at or near Galveston, Texas, on the ninth day of November, 1887; that the cotton destroyed was worth $1,736.38; that the Mallory line of steamers was the connecting common carrier; that article 278, of the Revised Statutes of Texas, was offered by the plaintiff, and is correctly set out by the plaintiff in his reply.

The bill of lading appropriate to the first count of the plaintiff's petition was as follows:

Form 19X-10-90-20M. C. A.

# COTTON BILL OF LADING.—"Domestic." No. D. 95.
# THE MISSOURI PACIFIC RAILWAY CO.

Hillsboro Station, _____Division, October 22, 1887.

*Received from W. H. Roberts, Jr., fifty (50) bales of cotton, in apparent good order, marked and numbered as below, to be transported from Hillsboro, Texas, to Galveston, and delivered to the consignees, or a connecting common carrier.*

[ORIGINAL.] The cotton aforesaid may pass through the custody of several carriers before reaching its destination, and it is understood as a part of the consideration for which the said cotton is received, that the exceptions from liability made by such carriers respectively shall operate in the carriage by them respectively of the said cotton, as though herein inserted at length; and especially that neither of said carriers or this company shall be liable for loss or damage of any kind, occasioned by delays from any cause, or by change of weather, or for loss or damage by fire, or for loss or damage on seas, lakes, canals or rivers. And it is further especially understood, that for all loss or damage occurring in the transit of the said cotton, the legal remedy shall be against the particular carrier only in whose custody the said cotton may actually be at the time of the happening thereof—it being understood that the Missouri Pacific Railway Company, in receiving the said cotton, to be forwarded as aforesaid, assumes no other responsibility for its safety or safe carriage than may be incurred on its own road. All cotton will be subject to necessary bailing, and is received *at owner's risk of wet and dirt*, and carriers will not be accountable for loss in weight arising from unavoidable causes. Freight to be paid on the actual gross weight as ascertained by the company's scales. Claims for damages must be reported by the consignee in writing to the delivering line within thirty-six hours after the consignee has been notified of the arrival of the freight at the place of delivery. If such notice of claim for damage is not thus given, neither the connecting or intermediate carriers shall be liable. *In the event of the loss of property under the provisions of this agreement, the value or cost of the same at the point of shipment shall govern the settlement.*

THE CARRIERS RESERVE TO THEMSELVES THE PRIVILEGE OF COMPRESSING ALL COTTON SIGNED FOR ON THIS BILL OF LADING.

No liability will be assumed for wrong carriage or wrong delivery of cotton that is imperfectly marked.

NOTICE.—This contract is accomplished, and the liability of the companies as common carriers thereunder terminates, on the arrival of the cotton at the station or depot of delivery, and it is understood and agreed that the companies will be liable as warehousemen only thereafter, and unless removed by the consignee from the station or depot of delivery within twenty-four hours after its said arrival, the cotton may be removed and stored by the company at owner's risk and expense in the warehouse of the company or one of its selection. and, after remaining in such warehouse sixty days, the carrier at point of destination may, at its election, advertise in one or more newspapers published in that county for not less than ten days, and sell the cotton either at that point or at such point on its line as it may select, and out of proceeds of such sale pay all charges.

In accepting this contract the shipper, or other agent of the owner of the cotton carried, expressly accepts and agrees to all its stipulations and conditions.

| RATES GUARANTEED. To Greenville, Conn. ——cts. per bale. 113 cts. per 100 lbs. Charges advanced, $———— | Consigned to Order C. E. Phillips, Cashier, Greenville, Conn. Notify H. T. Bennitt, Providence. R. I. |
|---|---|

| Number of Bales. | MARKS. | TAG NUMBERS. | WEIGHT. Subject to Correction. |
|---|---|---|---|
| Fifty | B. ⟨ 3 ⟩ B. | 10,511 10,560 D. M. Morgan, Agent. | Wilbour, Jackson & Co. Oct. 29, 1887. Providence, R. I. |

For Shetucket Co.

NOTE.—This Bill of Lading contains the following, among other indorsements, viz.: Delivered on the within Bill of Lading, thirty bales.

GEO. A. HARRIS,
Agent.

The other bill of lading was the same, in all its recitals, except as to the marks, numbers, weight and place of destination. The place of destination was Norwich, Connecticut, instead of Greenville, Connecticut.

The defendant then offered a mass of evidence tending to show that the cotton was duly transported by the defendant from Hillsboro to Galveston in the state of Texas, where it was tendered day by day for about eleven days to the Mallory line of steamers, the connecting carrier, which line of steamers was unable to receive it in consequence of a glut of freight, overtaxing its means of transportation; that, on or about the eleventh day after the arrival of the cotton at Galveston, the thirty-nine bales sued for were accidentally destroyed by fire, while loaded upon the defendant's cars in its railway stock-yards at or near Galveston; that the glut of cotton in its hands at Galveston was so great that the defendant had no other available place at which to put it ; that the defendant's locomotives used in and about the yards were equipped with the most approved spark-arresters; that the cotton was contained in the cars in which it had been originally shipped, which were box cars, closed and sealed; and that the defendant used the best efforts under the circumstances to save it after the fire broke out. But it also appeared from the defendant's evidence that it had no watchman at the stock-yards ; that there was a strike among the railway switchmen at the time; that there was also a circus in town; and that a circus usually collects a great many "tramps," who are in the habit of infesting railway yards at night. Nor did the defendant give any evidence tending to show that it notified any party to the bill of lading of the inability of the Mallory line promptly to receive and forward the cotton, and of its consequent delay at Galveston; or that it attempted to ship it by any other line of connecting carriers ; nor that it made any attempt, or did any act,

inconsistent with the conclusion that, at the time the cotton was burned, it held it for transportation, awaiting the convenience of the Mallory line to receive it. Whether the defendant had, under all the circum-. stances, acted reasonably and diligently, would have been a fair question for a jury under this evidence, if the question had been material.

But, as we shall more fully state hereafter, we are of opinion that the question was not material, for the reason that the bill of lading was an undertaking on the part of the defendant to be performed wholly within the state of Texas ; that, by virtue of the statute of Texas, the provision in the bill of lading, by which it attempted to release its common-law liability in case of loss by fire, is invalid ; and that, at the time of the loss, it held the cotton as carrier, and not as forwarder, and is hence liable therefor as an insurer under the principles of the common law.

It is perceived that the bill of lading nowhere contains any recital, that the exemptions from common-law liability therein contained are agreed to by the shipper or owner in consideration of any reduced rate of freight or of any other advantage accruing to the shipper or owner ; nor did the defendant offer any extrinsic evidence tending to show any consideration to support the agreement. The defendant's evidence, on the other hand, did show that the bill of lading is the same as is used by the defendant for all domestic shipments of cotton.

The court refused a series of instructions, tendered by the defendant, which it is not necessary to set out, and then gave judgment for the plaintiff for the agreed value of the cotton. These rulings of the court indicate that the court took one of two views of the law, applicable to this case : *First.* That, by reason of the statute of Texas, the defendant was, at the time of the destruction of the cotton by fire at Galveston, liable in respect of it as at common law. *Second.* That, if the

case is. not governed by the statute of Texas, the defendant was nevertheless liable as at common law by reason of the want of any consideration to support the agreement for special exemptions from liability.

We shall lay the second possible ground of the court's decision out of view, with the statement that it would require serious attention if the first ground were not decisive of the case. *McFadden v. Railroad*, 92 Mo. 343; *Conover v. Express Co.*, 40 Mo. App. 31; *Doan v. Railroad*, 38 Mo. App. 408; *Lewis v. Railroad*, 3 Q. B. Div. 45; *Louisville, etc., Ry. Co. v. Gilbert*, 88 Tenn. 430; s. c., 12 S. W. Rep. 1018.

We are of opinion that this was not an interstate contract of carriage, but that, under this contract, the obligation of the defendant was to be performed wholly within the state of Texas, and to cease when the defendant should transport the cotton safely and without unreasonable delay to Galveston, in the state of Texas, and there deliver it to a connecting carrier to be continued on its transit. Beyond this, the defendant stood liable only as a guarantor of the amount, which would be charged for freight on the arrival of the cotton at its final destination in the state of Connecticut. The only real ground on which it is claimed that these are through contracts, or interstate bills of lading, is, that they guarantee a through rate of freight to the point of ultimate destination named, in the state of Connecticut. The recital of an ultimate point of destination, and of a consignee beyond the limits of the state, does not, of itself, in any way tend to show that the contract was an interstate contract; because, in every case of the shipment of goods by connecting lines, the bill of lading contains this recital. Nor can such an inference be drawn from the fact that these bills of lading guarantee a through rate of freight to the point of ultimate destination. Undoubtedly, where a carrier makes a through rate of freight to a point of destination beyond the terminus of its own line, this is

evidence tending to show an undertaking on its part for the entire distance ; but it is not conclusive evidence of such an undertaking. In *Coates v. Express Co.*, 45 Mo. 238, 241, it was held that the receipt of freight by the first carrier for the entire route would go far to prove an undertaking to carry the goods to the point of ultimate destination. But in the subsequent case of *Snider v. Express Co.*, 63 Mo. 376, it was said in substance that the mere fact, that payment is taken by the first carrier for the whole route, would not raise the implication of a contract to carry through, where the written contract limits his liability to his own route. It was so held by the Kansas City Court of Appeals in *Moore v. Henry*, 18 Mo. App. 41, and by this court in *Wheeler v. Railroad*, 3 Mo. App. 359. In the last-named case, this court, speaking through LEWIS, P. J., said : "Plaintiff assumes that the import of each bill of lading was, on its face, a contract to convey the wheat to Atlanta. The circuit court found therein no undertaking for transportation further than Nashville. We think the circuit court was right. The words 'Atlanta, Georgia,' appended to the name of the consignee, could not mean the place of delivery, when a different place of delivery was declared in the plainest terms. The packages were to be transported 'to the company's freight station at Nashville, Tennessee, *there* to be delivered,' etc. We know of no legitimate process, whereby words so unequivocal may be ignored, or perverted to a purpose other than what they express. Certainly not by a mere addition to the consignee's name, without any preposition or auxiliary indication of anything more than personal description. The 'marks,' on the packages, taken by themselves, might serve for the address, indicating the destination of the articles shipped. But the copies of them, in the bill of lading, can serve no purpose other than to identify the packages. It would be strange if they could be

permitted to contradict the language used in the body of the contract, and so to control the destination."

Applying these principles to the present case, and keeping in view the canon of interpretation that a written instrument must, if possible, be so interpreted as to give effect to all its parts,—we find that the undertaking assumed by the defendant by the express terms of this contract is two-fold : *First.* To transport the cotton from Hillsboro, Texas, to Galveston, and to deliver it to the consignee or to a connecting carrier. *Second.* To guarantee a through rate of freight at $1.13 per one hundred pounds at the place of ultimate destination, which is marked as Greenville, Connecticut, in the one place, and as Norwich, Connecticut, in the other case. These two provisions, taken together, and eliminated from the rest of the contract, are entirely consistent with the conclusion that the defendant undertook to transport the cotton from Hillsboro to Galveston, and there to deliver it to a connecting carrier, which connecting carrier is agreed to be the Mallory line of steamers ; and, also, to stand as guarantor that the connecting carrier or carriers would not charge such a rate or such rates of freight as would make the aggregate rate from Hillsboro, Texas, to the respective points of destination in Connecticut exceed $1.13 per hundred pounds. There is in this language no undertaking, whatever, to do anything beyond delivering the cotton to the connecting carrier at Galveston, or stand liable in respect of the cotton beyond discharging the duty of transporting it to Galveston and there delivering it to the connecting carrier.

But, pursuing the language of this contract further, we find that it contains a stipulation which would have entirely precluded the plaintiff, or the consignor, from bringing an action against the defendant in case it has discharged the duty, above assumed, of transporting the cotton to Galveston, and there delivering it to the

Mallory line of steamers, without damage or unreasonable delay, and in case the cotton had been lost, damaged or destroyed while in the hands of the Mallory line or of some other connecting carrier. The language is as follows: "And it is further especially understood that for all loss or damage occurring in the transit of the said cotton, the legal remedy shall be against the particular carrier only, in whose custody the said cotton may actually be at the time of the happening thereof, it being understood that the Missouri Pacific Railway Company, in receiving the said cotton to be forwarded as aforesaid assumes no other responsibility for its safety or its safe carriage than may be incurred on its own road."

There is also in the contract a stipulation to the effect, that the exemption from liability therein contained shall accrue to the benefit of any connecting line; but that is equally consistent with the conclusion that the defendant had traffic arrangements with contracting lines of carriers, and that it made a bill of lading which might, in case of an action brought against any of the connecting lines, contain provisions beneficial to it and accruing to it. It does not show an agreement to stand under the obligation either of a carrier or a forwarder for the whole distance between Hillsboro, Texas, and the points named in Connecticut, especially in the face of the stipulations in the contract which import the contrary. The contract in question was, therefore, subject to the provisions of the statute of Texas, above set out, and in so far as it contained a special agreement limiting the common-law liability of the defendant as an insurer against loss by fire, it was, under the terms of that statute, invalid.

This justifies the judgment of the circuit court, and renders it unnecessary for us to say more, unless there is something requiring observation in the additional argument of the defendant, that, during the eleven days in which the defendant held this cotton at

Galveston, awaiting the pleasure of the Mallory line of steamers, it held it as forwarder and not as carrier, and hence is liable only for negligence as an ordinary bailee for hire, notwithstanding the statute of Texas. It is to be perceived that this position is inconsistent with the first position taken by the defendant. The two positions are contradictory. If this was a through contract of carriage from Hillsboro, Texas, to Greenville, Connecticut, then the defendant stood liable as a *carrier* for the whole route, and it could not at its option split up the contract, so as to make itself liable for a part of the route as carrier and for another part as forwarder. But, while this is so, it seems that the defendant is entitled to fall back upon the plaintiff's theory, and to say that, "although that view may be taken by the court; although the court may hold that, by reason of the statute of Texas, we were liable as at common law, yet when we transported the goods to the end of our line at Galveston, and there tendered them to the connecting carrier, and that carrier refused or delayed for an unreasonable length of time to receive them, we thereafter held them not as carriers, but as forwarders, and hence as ordinary bailees for hire, and are, therefore, not liable for their loss except upon proof of negligence.

But this court is of opinion that no circumstances were shown in evidence, which would warrant the conclusion that the relation of the defendant to the goods had shifted from that of a carrier to that of a forwarder at the time of their loss. Whatever difference of judicial opinion there may be as to the relation under which a carrier holds goods after they have arrived at their destination, there seems to be no substantial difference of opinion upon the proposition that, so long as he holds them for delivery to a succeeding carrier, he holds them for *transportation,* and not *for delivery,* and that he hence holds them as carrier and not as an ordinary bailee. And although the connecting carrier refuses or

unreasonably delays to receive them, the first carrier still holds them as carrier until, by warehousing them, or otherwise, he does some unequivocal act indicative of a purpose to change his office from that of carrier for transportation to that of a mere custodian for safe keeping. So long as he holds the goods on his vehicles of transportation, awaiting the pleasure, the convenience or the necessities of the succeeding carrier, he clearly holds them as carrier, and subject to the liabilities which attach to him in that character. These conclusions are deducible from the following among many other cases: *Goold v. Chapin*, 20 N. Y. 259; s. c., 75 Am. Dec. 398; *McDonald v. Railroad*, 34 N. Y. 497; *Mills v. Railroad*, 45 N. Y. 622; *Hooper v. Railroad*, 27 Wis. 92; *Wood v. Railroad*, 27 Wis. 552; *Conkey v. Railroad*, 31 Wis. 619; *Railroad v. Mfg. Co.*, 16 Wall. (U. S.) 318; *Condon v. Railroad*, 55 Mich. 221.

It results that the judgment of the court is the conclusion of the law upon an undisputed state of facts, and must be affirmed. It is so ordered. All the judges concur.