SALTER, by guardian *ad litem*, Respondent, vs. KRUEGER, Appellant.

65 217
83 361
65 217
100 398

*January 16 — February 2, 1886.*

*Equity: Parties: Partnership: Infancy: Fraud: Avoidance of contract: Remedy at law.*

S., an infant, and E. were partners. E. absconded with a large part of the firm property. K. and O., creditors of E., by falsely representing that they would protect the balance of the firm property in the possession of S., induced S. to execute a note in the firm name to K. for an amount equal to the combined claims of K. and O., and to secure the same by a chattel mortgage upon such property, which mortgage was duly filed. In an action in the name of S., by his guardian *ad litem*, against K. to have such note and mortgage canceled, it is *held*, on demurrer to the complaint:

(1) O. was not a necessary party defendant.

(2) E. was not a necessary party plaintiff or defendant.

(3) The facts stated are sufficient to authorize equitable interference.

APPEAL from the Circuit Court for *Washington* County. The case is thus stated by Mr. Justice CASSODAY:

"The complaint alleges, in effect, that the plaintiff is an infant, and brings this action by his guardian *ad litem;* that May 1, 1885, he purchased of Vile Emery, the then sole owner, and paid for in cash to him, and received therefor a bill of sale from him, the undivided one-half interest and share of the personal property described, constituting a livery stock; that on the same day the plaintiff and Emery entered into a copartnership to commence and carry on a livery business with said property, under the firm name and style of Emery & Salter; that they did, as such partners, carry on such livery business with said property until May 13, 1885, when Emery absconded with a large portion of said property, without in any manner settling or accounting with the plaintiff for or in relation to said property or the debts and accounts of the business; that as soon as the

plaintiff learned the fact, and on May 18, 1885, he dissolved the firm and published notice of dissolution; that the plaintiff has no knowledge of the whereabouts of Emery or the property taken away by him; that Emery was at the time individually indebted in a large amount to various persons; that the plaintiff remained in the possession of the portion of said property not taken away by Emery, and with it continued to carry on a livery business at the same place as theretofore; that the plaintiff was without any business experience; that May 18, 1885, the defendant and one Ott, being two of Emery's creditors, came to the plaintiff and represented to him that they were creditors of Emery in a large amount, that Emery was indebted to various other persons in large amounts, and that such other creditors of Emery would seize the portion of said property in possession of the plaintiff, and fraudulently represented to the plaintiff that the defendant would protect said property from Emery's other creditors if the plaintiff would, in said firm name, execute to the defendant and deliver to him a negotiable promissory note of $255, payable in one year from that day, with interest (being equal to the combined claims of the defendant and Ott against Emery), and secure the same by executing in said firm name, and delivering to the defendant, a chattel mortgage on the portion of said property still in possession of the plaintiff, and that only by such means could the plaintiff's rights to said property be saved to him; that, by means of such fraud and false representations of the defendant, the plaintiff was put in fear that he would lose his rights in said property, and while so in fear he was induced by the defendant to go with him and Ott to a lawyer who had theretofore been the plaintiff's counsel, and in whom the plaintiff had confidence, but who was at the time, unknown to the plaintiff, acting as the attorney of the defendant and Ott to collect and secure their claims against Emery; that then and there, by and

through the false and fraudulent representations of the defendant, Ott, and said attorney, that the rights of the plaintiff would be so, and not otherwise, protected, and, taking advantage of this plaintiff's youth and want of experience in business, induced the plaintiff to execute in said firm name, and deliver to the defendant, such note and chattel mortgage for the amount named, which mortgage was on the same day by the defendant filed and placed on record in the office of the city clerk of West Bend, and still so remains of file and record; that said note and mortgage were so given without any consideration whatever; that the plaintiff had demanded said note and mortgage to be delivered up and canceled, which was refused by the defendant; that the plaintiff fears the defendant may sell or dispose of the note, or seize or take possession of the property under the clause in the mortgage empowering him to do so at any time in case he deems himself insecure, unless restrained by the injunctional order of the court; that no settlement or accounting had been had of the accounts and property of the firm, and there are debts of the firm still outstanding. The prayer was, in effect, for such injunction *pendente lite*, and that the note and mortgage be adjudged null and void, and delivered up and canceled, and that the defendant be restrained from interfering with the property.

"To that complaint the defendant demurred, on the grounds (1) of a defect of parties plaintiff by the omission of Emery; (2) of a defect of parties defendant by the omission of Ott, and (3) by the omission of Emery; (4) that the complaint fails to state facts sufficient to constitute a cause of action; (5) that the plaintiff has an adequate remedy at law; (6) that the complaint fails to state facts sufficient to constitute a cause of action in equity. From an order overruling the demurrer the defendant appeals."

For the appellant there was a brief by *Paul A. Weil*, attorney, and *Chas. T. Hickox*, of counsel, and oral argu-

ment by *Mr. Hickox*. They contended, *inter alia*, that the facts alleged are not sufficient to justify the interference of a court of equity: 1. The note is not liable to abuse from its negotiable nature. It is affirmatively shown to be in defendant's possession. If he has disposed of it, the defense of infancy is equally available against the indorsee. An injunction restraining defendant from taking the property and disposing of the note could not legally issue, because there is a valid defense to each at law. *Rogers v. Cross*, 3 Pin. 36; *Pennoyer v. Allen*, 50 Wis. 308; *Smith v. Oconomowoc*, 49 id. 694. There is no allegation that the defendant is insolvent. If he disposes of the note no loss could occur, for he would be liable to whomever he had wronged by its disposal or its conversion. 2. The facts alleged do not constitute fraud against the plaintiff. When the defendant and Ott sought to secure their claims there were other creditors who were likely to seize Emery's interest in the partnership property, which would necessitate a settlement of the partnership matters and a consequent cessation of business; and this the plaintiff evidently knew and sought to avoid. So far as it was a fraud on other creditors, plaintiff was equally guilty with defendant and Ott; and he cannot now rescind his act by alleging his own fraud. *Homer v. Wood*, 11 Cush. 62; *Farley v. Lovell*, 103 Mass. 387. Though an infant, the plaintiff could act as an agent, and his acts would bind his principal. Tyler on Infancy, 122. He acted as agent of the firm, in signing the note and mortgage, and cannot object to the validity of his own acts. *Smith v. Kemper*, 6 Am. Dec. 708. 3. The defense to the note and mortgage is not difficult or uncertain at law. Tyler on Infancy, 57 *et seq.;* Jones on Chat. Mortg. sec. 40. Emery, if he chose not to ratify the note and mortgage, could also defend successfully in an action at law. *Smith v. Sloan*, 37 Wis. 285; *Levi v. Latham*, 15 Neb. 509. Replevin or trover would lie for the note and mort-

gage. Wells on Replevin, secs. 59, 557; *Terry v. Allis*, 20 Wis. 32; *Decker v. Mathews*, 12 N. Y. 313; *Boughton v. Bruce*, 20 Wend. 234; *Cotzhausen v. Judd*, 43 Wis. 213. That equity will not interfere in such a case, see *Rogers v. Cross*, 3 Pin. 36; *Armstrong v. Gibson*, 31 Wis. 66; *Campbell v. Campbell*, 57 id. 288; *Shephard v. Genung*, 5 id. 398; *Pennoyer v. Allen*, 50 id. 308; *Knight v. Ashland*, 61 id. 246; *Lynch v. Willard*, 6 Johns. Ch. 344. Emery is a necessary party to the action, he being united in interest with the plaintiff, and his presence being necessary to a complete determination of the controversy. R. S. secs. 2604, 2605; *Boughton v. Allen*, 11 Paige, 326; *Bailey v. Inglee*, 2 id. 278; Story's Eq. Jur. sec. 1526; Bliss on Code Pl. sec. 61. Ott's presence is also necessary, he claiming an interest adverse to the plaintiff. *Peck v. School Dist.* 21 Wis. 520. Defendant, as trustee for Ott, has the right to have the latter made a party, and to have him contribute his share of the costs. *Strohn v. Hartford Ins. Co.* 33 Wis. 661; *Dart v. Palmer*, 1 Barb. Ch. 92; Adams, Equity, 363.

For the respondent there was a brief by *P. & T. O'Meara*, and oral argument by *Mr. P. O'Meara*.

CASSODAY, J. The note and mortage were given for the aggregate amount of a debt due from Emery to the defendant and another debt due from Emery to Ott. Both were taken in the name of the defendant alone. Ott was not mentioned nor referred to in either. He was present and participated in their procurement, but otherwise was not a party to the transaction. Evidently Ott constituted the defendant his trustee of an express trust. Sec. 2607, R. S. Assuming the rightful execution of the note and mortgage, then they were enforceable in the name of the defendant alone without making Ott a party. *Ibid.; Waterman v. C., M. & St. P. R. Co.* 61 Wis. 468; *Poor v. Guilford*, 61 Am. Dec. 749; *Johnson v. Catlin*, 62 Am. Dec. 622. This being

so, we think he was not a necessary party to this action, having no other purpose than to avoid the note and mortgage.

Emery was not present when the note and mortgage were made. He had weeks before absconded with a large portion of the partnership property. He was not a party to the transaction, and it was consummated without any authority from him. The contract sought to be avoided was wholly between the plaintiff and the defendant. True, the plaintiff was induced to execute the papers in the firm name. But the firm property was first liable to the payment of the firm debts and the settlement of the copartnership. It was only so much of the partnership property as might remain after such payment and settlement that could be properly divided between the partners. It was only Emery's share of such remainder that could be reached by his individual creditors. The plaintiff was not liable for such debts, nor was his share of such remainder. By giving the note the plaintiff voluntarily promised to pay to the defendant the amount due to two of Emery's individual creditors. The only other perceivable effect of the transaction, assuming it to have been binding, was that the plaintiff thereby voluntarily secured said note by mortgaging to the defendant whatever remaining interest he might have had in the firm property after the settlement and payment of all the firm debts. Such interest could not otherwise have been reached by the defendant or Ott by virtue of their respective claims against Emery. In this action, to avoid that promise and pledge, the defendant, and Ott, through him, and the plaintiff, seem to be the only parties interested. We must hold that Emery was not a necessary party plaintiff or defendant.

The facts stated seem to be sufficient to constitute a cause of action. The note and mortgage were given without any consideration whatever. They were in no sense for the plaintiff's benefit, but greatly to his disadvantage. They

were procured by misrepresentation, circumvention, and imposition. The plaintiff is an infant, and he brings this action by his guardian *ad litem*, for the sole purpose of avoiding his note and mortgage so improvidently given. Upon the facts stated, his right to avoid them by reason of his infancy cannot well be doubted. He certainly might have successfully resisted the enforcement of their collection by defendant. Even had the defendant acquired the possession of the mortgaged property under the mortgage, still the plaintiff might have disaffirmed the contract and replevied the property or recovered its value. *Miller v. Smith*, 26 Minn. 248; *Corey v. Burton*, 32 Mich. 30; *Stafford v. Roof*, Ewell's Lead. Cas. 93, and notes.

The more serious question is whether the facts stated are sufficient to authorize equitable interference. Without attempting any discussion, we are constrained to hold that the facts stated are sufficient to constitute a good cause of action in equity. The note and mortgage were not void, but merely voidable. *Tucker v. Moreland*, 10 Pet. 72; *S. C.* Ewell's Lead. Cas. 135; *Chapin v. Shafer*, 49 N. Y. 407; Jones on Chat. Mortg. § 40, and cases there cited; *Callis v. Day*, 38 Wis. 643. Besides, the mortgage was on file, and hence constructive notice to everybody that the defendant claimed the mortgaged property by virtue of the mortgage. This being so, it was a standing menace to any who might otherwise be willing to become purchasers. That it would seriously interfere with, if it did not entirely prevent, the sale of the property by the plaintiff, no one will doubt. In *Tucker v. Moreland*, *supra*, Mr. Justice STORY, after learnedly discussing the effect of a deed given by an infant, concluded that: "The general result seems to be that, where the act of the defendant is by *matter of record*, he must avoid it by some *act of record* during his minority; but if the act of the infant is a matter *in pais*, it may be avoided by an act *in pais* of equal solemnity or notoriety;

and this, according to some authorities, either during his nonage or afterwards, and, according to others, at all events after his arrival of age. . . . In short, the nature of the original act or conveyance generally governs as to the nature of the act required to be done in the disaffirmance of it. If the latter be of as high and solemn a nature as the former, it amounts to a valid avoidance of it. We do not say that in all cases the act of disaffirmance should be of the same or of as high and solemn a nature as the original act; for a deed may be avoided by a plea; but we mean only to say that if the act of disaffirmance be of as high and solemn a nature, there is no ground to impeach its sufficiency."

We do not here say that the principle thus announced is of universal application, but it furnishes a strong reason for entertaining this suit for the purpose of placing on record a substantial disaffirmance of the mortgage filed, which is of record. Besides, the plaintiff having given the mortgage, and it not being absolutely void, but merely voidable, there may be a question whether he could sell the property against the will of the defendant without subjecting himself to the punishment prescribed in sec. 4467, R. S. It may be that the incapacity to bind might preclude any intent to defraud in subsequently making a sale to avoid the mortgage. For a discussion of the question, see *State v. Plaisted*, 43 N. H. 413. But assuming that section to be inapplicable, still we are constrained to hold that the facts stated justified equitable interference.

*By the Court.*— The order of the circuit court is affirmed.